Not Intended For Publication or Citation

Eastern District of Kentucky
**FILED**

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
at COVINGTON**

MAR 3 1 2007

AT COVINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

**CIVIL ACTION NO. 06-141-DLB**

**L. CRAIG KENDRICK, ET AL.**                                           **PLAINTIFFS**

**vs.**                              **MEMORANDUM OPINION & ORDER**

**STANDARD FIRE
INSURANCE COMPANY, ET AL.**                               **DEFENDANTS**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This matter is before the Court on several pending motions, which fall into two categories. One, most of the named Defendants have moved to dismiss this action based on various, overlapping grounds. (Docs. #18, #36, #47, #50, #53, #55, #61, #62, #74, #77, #111, #112) And two, Plaintiffs have moved to remand this case to state court. (Doc. #51) These matters are ripe for consideration.

### Background

Plaintiffs initiated this action with their June 9, 2006, filing of a Class Action Complaint in the Kenton County District Court.[1]  On June 16, 2006, Plaintiffs filed an Amended Class Action Complaint, the substance of which mirrored the original Complaint,

---

[1]A Kentucky district court's jurisdiction in civil matters is typically limited to cases under $4,000.00. K.R.S. § 24A.120(1). The named Plaintiffs proposed class consists of plaintiffs whose claims do not exceed $4,000.00 each.

but also added two additional Plaintiffs, two additional Defendants, and eliminated the Kentucky Attorney General's and Insurance Commissioner's offices as Defendants.[2]

The named Plaintiffs sue on behalf of themselves and those similarly situated. The gist of their lawsuit is that Defendant insurers are adding local tax charges to their insurance premium – be it city, county, charter county, consolidated local government, or urban-county government taxes – along with a fee for collection of this local tax. According to Plaintiffs, while the tax is supposed to be based on the actual premiums paid to insure a risk in a particular geographic area, Defendants have failed in various ways to correctly administer these local taxes. As noted, their lawsuit was filed as a proposed class action. In addition to a Plaintiff class, they propose a Defendant class of insurers who are authorized to do business in Kentucky and who have been improperly charging local tax premiums.[3]

Plaintiffs' Amended Complaint presents eight counts. They sue for illegal dealing in premiums in violation of K.R.S. § 304.1-190, relying upon K.R.S. § 446.070 to pursue a civil claim for violation thereof (Count I); fraud (Count II); conversion (Count III); negligent misrepresentation and servicing (Count IV); breach of fiduciary duty (Count V); civil conspiracy (Count VI); a declaration that Defendants have been improperly charging

---

[2]Plaintiffs subsequently voluntarily dismissed the Kentucky Department of Insurance.

[3]Plaintiffs propose to define the class as "All customers of the Defendants and customers of any other insurance company doing business in the Commonwealth of Kentucky who purchased an insurance policy and who were unlawfully charged local government premium taxes or collection fees for the period of time from January 2001 to the present and have not had their premiums returned to them by the date of the filing of the Complaint."

collection fees in addition to the local tax (Count VII); and vicarious liability for conducting the complained-of actions through their agents and employees (Count VII).

This Kenton District Court lawsuit was removed to this Court on July 14, 2006, by Defendants State Farm Auto and State Farm Fire & Casualty. Defendants Travelers Insurance and Standard Fire Insurance also removed the case the same date, which removal was assigned Covington case no. 06-144 and has since been consolidated for all purposes with this action. These Defendants removed in reliance upon the provisions of the Class Action Fairness Act of 2005 ("CAFA" or "the Act"), 28 U.S.C. §§ 1332(d) and 1453. Since removal, several of the named insurance Defendants have filed motions to dismiss, advancing threshold challenges to the various claims itemized above. However, prior to consideration of these dismissal requests, the Court must first ensure its subject matter jurisdictional authority to entertain such requests by turning to Plaintiffs' request to return their case to the Kenton District Court.

### Discussion

### A.    Motion to Remand

Plaintiffs seek to have this case remanded to the Kenton District Court. In support of this request, Plaintiffs submit Defendants have not met their burden of establishing the jurisdictional requirements of the CAFA and, therefore, that Plaintiffs' cause of action is not one capable of being removed thereunder. Alternatively, Plaintiffs maintain this Court should decline to exercise subject matter jurisdiction pursuant to the CAFA because the "interests of justice" statutory exception applies.

-3-

The CAFA confers federal subject matter diversity jurisdiction over class actions where the aggregate amount in controversy exceeds $5 million.

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which – (A) any member of a class of plaintiffs is a citizen of a State different from any defendant[.]

28 U.S.C. § 1332(d)(2)(A).   As this language reflects, the Act did away with the nonaggregation rule.  *See also id.* § 1332(d)(6).  It also now provides original federal court jurisdiction over class actions with only minimal diversity.

> A class action may be removed to a district court of the United States in accordance with section 1446 (except that the 1-year limitation under section 1446(b) shall not apply), without regard to whether any defendant is a citizen of the State in which the action is brought, except that such action may be removed by any defendant without the consent of all defendants.

28 U.S.C. § 1453(b).

As the removing party, Defendants bear the burden of establishing jurisdiction. *Ahearn v. Charter Township of Bloomfield,* 100 F.3d 451, 454 (6th Cir. 1996); *Alexander v. Electronic Data Sys. Corp.,* 13 F.3d 940, 948-49 (6th Cir. 1994).  In the case at bar, Plaintiffs raise two points in opposition to Defendants' establishment of jurisdiction.  One, Plaintiffs contend Defendants have not come forth with sufficient evidence to establish the action involves at least the number of putative Plaintiffs required by the Act.  And two, they also contend Defendants have failed to establish that the amount in controversy exceeds $5 million in the aggregate.  It does not appear that, in this action, Plaintiffs contend that Defendants have failed to show minimal diversity.

The CAFA does not apply to class actions in which "all proposed plaintiff classes in the aggregate is less than 100," 28 U.S.C. § 1332(d)(5)(B), and thus by inference the

-4-

proposed plaintiff class must be 100 persons or more. In their Notices of Removal and/or filings in opposition to remand, Defendants point out that Plaintiffs' Complaint asserts that "there are likely tens of thousands [of] members of the Plaintiffs' Class." While in their motion Plaintiffs protest that Defendants have not come forth with any actual evidence of the believed Plaintiff class size, the Court finds it is not necessary for them to do so. Looking at the Amended Complaint at removal, *see Ahearn,* 100 F.3d at 454 (citing *Pullman Co. v. Jenkins,* 305 U.S. 534, 537 (1939)), and presuming that this factual contention by Plaintiffs was asserted in good faith and based upon evidentiary support or likely to have evidentiary support after opportunity for investigation and discovery, Plaintiffs allege a sufficient putative class size to fall within the CAFA. *See also* 28 U.S.C. § 1446(b) ("If the case *stated by the initial pleading* is not removable....").

As for the $5 million amount in controversy requirement, the face of Plaintiffs' Amended Complaint does not set forth an estimate of aggregate damages. However, it can be reasonably deduced from the allegations that are stated that the aggregate amount in controversy *could* exceed $5 million. As Defendants note, the named Plaintiffs' alleged damages for erroneously collected premium taxes average $56.04 per year. And given that the proposed class period is approximately five years, this amounts to an average of approximately $280.20 per named Plaintiff over this period. Since the Amended Complaint alleges that there are tens of thousands of putative class members, a 20,000 member class with this average of damages would result in an aggregate of approximately $5.6 million.

The Court finds this to be a reasonable extrapolation, given the allegations of the Complaint. That is, that the aggregate damages "more likely than not" will exceed $5

million, *See Rogers v. Wal-Mart Stores, Inc.,* 230 F.3d 868, 872 (6th Cir. 2000), has been demonstrated by Defendants.[4]   To the extent there remains a question, removing Defendants also point out other damages sought in the Amended Complaint. Specifically, that Plaintiffs seek a declaration that insurers have erroneously charged fees for collection of local taxes. In their Amended Complaint, Plaintiffs also seek punitive damages and attorneys' fees. The Sixth Circuit recently reiterated that statutory attorneys fees are included in considering the amount in controversy. *Williamson v. Aetna Life Insurance Co.,* – F.3d – , 2007 WL 845862, at *5 (6th Cir. 2007). Other jurisdictions have so noted in the CAFA context, provided they are authorized by that state's law. *Lowdermilk v. U.S. Bank National Ass'n,* – F.3d –, 2007 WL 678221, at *4 (9th Cir. 2007); *Frazier v. Pioneer Americas LLC,* 455 F.3d 542, 545 (5th Cir. 2006); and *Brown v. Jackson Hewitt, Inc.,* 2007 WL 642011, at *3 (N.D. Ohio 2007)(noting both punitive damages and legal fees are considered in determining amount in controversy in the Sixth Circuit).   Given these circumstances, the Court concludes Defendants have established the requisite requirements for jurisdiction under the CAFA. 28 U.S.C. § 1332(d)(2).

The Act also provides for certain mandatory and discretionary exceptions. The statute directs that the court "*shall* decline to exercise jurisdiction," 28 U.S.C. § 1332(d)(4)

---

[4]Removing Defendants also refer to a newspaper reference by one of Plaintiffs' counsel in which he estimates that the claims could reach hundreds of millions of dollars statewide. Plaintiffs' protest reliance upon a newspaper comment as evidence of amount in controversy. While arguably this comment has some relevancy, at least to the extent that the amount in controversy is viewed "from the perspective of the plaintiff, with a focus on the economic value of the rights he seeks to protect," *Woodmen of the World/Omaha Woodmen Life Ins. Soc'y v. Scarbro,* 129 F. App'x 194, 195-96 (6th Cir. 2005)(unpublished), the Court need not address this particular protest further, since Defendants establish via other information that it is reasonable to conclude the amount in controversy is satisfied here.

(emphasis added), in circumstances where two-thirds or more of the members of all proposed plaintiff classes, in the aggregate, are citizens of Kentucky and the primary defendants are citizens of Kentucky (the "home state" exception, *id.* § 1332(d)(4)(A)(I)); or where two-thirds or more of the members of all proposed plaintiff classes, in the aggregate, are citizens of Kentucky, at least one Kentucky defendant's conduct forms a significant basis for the claims and significant relief is sought from this defendant, no similar class action has been filed against any of the defendants in the past three years, and the principal injuries from the alleged conduct of each defendant occurred in Kentucky (the "local controversy" exception, *id.* § 1332(d)(4)(A)(ii)). There is also a discretionary "interests of justice" exception where a federal court *may* decline to exercise of jurisdiction if certain circumstances are present. *Id.* § 1332(d)(3)(emphasis added). For this exception to apply, there must be more than one-third but less than two-thirds of plaintiff class members, in the aggregate, are citizens of Kentucky, the primary defendants are Kentucky citizens, and consideration of certain additional factors gauging local versus multistate or national connection favor remand.

In the few decisions thus far interpreting the Act, there has been some difference of opinion on who bears the burden of establishing these exceptions. The query invokes weighing the traditional rule that it is a defendant who carries the burden of establishing removal jurisdiction, against the Act's purpose to expand jurisdiction over certain class actions and remarks from its legislative history that suggest the framers intended for plaintiffs to bear the burden of proving jurisdiction does not exist. The Sixth Circuit has not spoken on this point. However, the circuits that have examined the question have placed the responsibility for demonstrating an exception applies on the plaintiff. *See Evans v.*

*Walter Indus., Inc.,* 449 F.3d 1159 (11th Cir. 2006); *Frazier v. Pioneer Ams., LLC,* 455 F.3d 542 (5th Cir. 2006); and *Hart v. FedEx Ground Package Sys., Inc.,* 457 F.3d 675 (7th Cir. 2006). The legislative history of the CAFA also supports that position.

In this particular case, Plaintiffs have not alleged that either the "home state" or "local controversy" exceptions apply. However, Plaintiffs' remand motion did propose that remand was in order under the "interests of justice" exception. Plaintiffs' motion addressed the various factors identified in the statute in an effort to try and persuade the Court that the action was one particularly suited for pursuit in the Kentucky state courts. There was one significant omission in Plaintiffs' motion analysis, an omission ultimately noted in Plaintiffs' reply. That is, that consideration of the various factors is not implicated unless and until it is first shown that the "interests of justice" exception's initial requirements – between one-third and two-thirds of plaintiffs classes are Kentucky citizens and that the primary defendants are Kentucky citizens.

Plaintiffs in conclusory fashion suggest the required number of citizen Plaintiffs cannot realistically be disputed. But without further information of the estimated class membership and citizenship of those members, the Court will not simply presume the greater than one-third and less than two-thirds requirement. *See Evans v. Walter Indus., Inc.,* 449 F.3d 1159 (11th Cir. 2006)(wherein the court, in examining whether two-thirds of plaintiffs were of forum citizenship for "local controversy" exception rejected affidavit speculating on citizenship composition, noting "that difficulty [demonstrating that two-thirds of plaintiffs were Alabama citizens], however, is to a considerable degree a function of the composition of the [extremely broad] class designed by plaintiffs."). And, perhaps more importantly, Plaintiffs themselves acknowledge in their Reply that

> analysis of the instant action reveals factors that support discretionary remand, with one procedural glitch – although Plaintiffs have sought certification of a class of Defendants that will include primary defendant(s) who are residents of the Commonwealth of Kentucky, there is *currently* no Kentucky defendant present to invoke the discretionary remand provisions of 28 U.S.C. § 1332(d)(3).

(Doc. #96, p. 2)(emphasis in original).  Thus, Plaintiffs acknowledge they are unable to demonstrate the requirements for the Court to consider a discretionary remand, at least at this time, suggesting the issue may resurface when certification of the Defendant class is taken up.  The Court certainly concurs with Plaintiffs' observation that none of the named Defendant insurers is a Kentucky corporate citizen and that this is a relevant consideration to determining "primary defendants."  But this case, of course, also presents the unique situation of seeking not just a plaintiff but also a defendant class.  The Court's research revealed no decisions under the CAFA involving defendant classes, nor does the language of the Act or its history suggest such possibility was envisioned by Congress.  The term "primary defendant" is not defined in the CAFA.  Those courts faced with interpreting the term have imposed fairly high evidentiary requirements, even outside the defendant class scenario presented here.  In *Robinson v. Cheetah Transp.,* 2006 WL 3322580 (W.D. La.), for example, where "essentially identical" claims were made against multiple defendants, the court concluded plaintiffs' pointing to two citizen defendants failed to evidence that all of "*the* primary defendants" were residents of the state per the statutory language, as opposed to a primary defendant.  *Id.* at *2.  The *Robinson* court also referenced the Act's legislative history.

> For the purposes of class actions that are subject to subsections 1332(d)(3) and (d)(5)(a), the Committee intends that primary defendants" be interpreted to reach those defendants who are the real targets" of the lawsuit-i.e., the defendants that would be expected to incur most of the loss if liability is

-9-

> found. Thus, the term primary defendants should include any person who has substantial exposure to significant portions of the proposed class in the action, particularly any defendant that is allegedly liable to the vast majority of the members of the proposed classes (as opposed to simply a few individual class members). It is the Committee's intention with regard to each of these exceptions that the party opposing federal jurisdiction shall have the burden of demonstrating the applicability of an exemption. Thus, if a plaintiff seeks to have a class action remanded under section 1332(d)(4)(a) on the ground that the primary defendants and two-thirds or more of the class members are citizens of the home state, that plaintiff shall have the burden of demonstrating that these criteria are met by the lawsuit.

*Id.* at *2-3 (quoting S. Rep. No. 109-14, at 43-44 (2005)). This commentary is relevant, given that "primary defendants" is not defined within the Act. It suggests that primary defendants are those believed to be liable to the vast majority of the class members, and that all of the primary defendants must be residents of the home state. Plaintiffs have not evidenced either of these requirements here. Moreover, determining who are "primary defendants" is particularly problematic in this case, where a defendant class has been proposed but whose membership has yet to be identified. Similar to *Evans,* this Court likewise notes that the difficulty Plaintiffs face in clearing this hurdle "is to a considerable degree a function of the composition of the class designed by plaintiffs." As a result, the Court concludes that Plaintiffs have failed to show the factors required by § 1332(d)(3) and therefore remand pursuant to the "interests of justice" section is not appropriate.[5]

---

[5]Nor would the Court except jurisdiction pursuant to either the "home state" or "local controversy" provisions, were it necessary to examine these exceptions due to their mandatory language directing that a district court *shall decline to exercise jurisdiction*, and the Court's independent obligation to ensure that it in fact has subject matter jurisdiction. The "home state" exception also requires that the primary defendants be Kentucky citizens and, as discussed above, this has not been shown. The "local controversy" requires proof that two-thirds or more of Plaintiffs are Kentucky citizens, which likewise has not been established. It also requires there be at least one Kentucky defendant whose conduct forms a significant basis for the claims and from whom significant relief is sought. But without some showing as to the significance of relief being sought from a Kentucky defendant, and the ability to compare that relief relative to the other co-defendants, *see Evans,* 449 F.3d at 1167, this requirement likewise cannot be established.

-10-

Accordingly, based upon the presentation of the parties, the Court accepts that it has jurisdiction over this proceeding under the CAFA.[6]

### B.      Motions to Dismiss

Several Defendants have filed either motions to dismiss, and/or joined in the motions of others.  The motions are addressed herein in a collective summary fashion, grouped by nature of the challenge.

### (1)      Administrative Exhaustion and Violation of KRS § 304.12-190

All of the Movant Defendants maintain Plaintiffs' lawsuit must be dismissed on the basis that Plaintiffs have failed to exhaust their administrative remedies.[7]  The gist of Defendants' argument is that each of Plaintiffs' claims in this case arise from the alleged failure to properly collect local government insurance premium taxes, a problem more appropriately left to the jurisdiction of the Kentucky Insurance Commissioner.

---

[6]As previously noted, a second case that was opened in this Court when Defendants Travelers Property Casualty Insurance Company and Standard Fire Insurance Co. removed this same cause of action has since been consolidated with this one for all purposes.  It should be pointed out that the removing Defendants in 06-141 relied solely upon the CAFA as the basis for removal jurisdiction.  However, Defendants in now consolidated 06-144 also asserted diversity jurisdiction as an alternate jurisdictional basis in their Notice of Removal.  Plaintiffs' remand motion herein addresses only the CAFA as failing to provide a basis for jurisdiction.  While the Court must always consider whether substantively it has subject matter jurisdiction over a proceeding, regardless of whether the basis is the subject of a remand motion, here the Court need not address the merits of whether diversity subject matter jurisdiction is present given its conclusions on the application of the CAFA as providing jurisdiction.

[7]This and other challenges were raised by Defendant Capitol Indemnity Corporation in its Motion to Dismiss. (Doc. #50) Plaintiffs protest that Capitol's motion, unlike those of the other Defendants, is barred because it has already answered, and any Civil Rule 12(b)(6) motion challenges must be raised prior to the filing of a responsive pleading. *Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 700 (6th Cir. 1978).  The Court, however, sees no need to evaluate the merits of this protest, given that the challenges raised by Capitol mirror those of other Defendants whose motions Plaintiffs acknowledge are not barred.

Kentucky Revised Statutes Chapter 91A, Finance and Revenue of Cities, permits local governments to elect "to impose and collect license fees or taxes upon insurance companies for the privilege of engaging in the business of insurance[.]" KRS § 91A.080(1). The statute allows for the insurer to charge a "reasonable collection fee" as compensation for collecting the taxes that are remitted to the particular local government authority. *Id.* § 91A.080(4). The license fee or tax is imposed upon the insurer for life insurance policies issued "upon the lives of persons residing within the corporate limits of the [local government authority]." *Id.* § 91A.080(2). It is imposed upon the insurer for policies other than life "on risks located within the corporate limits of the [local government authority]." *Id.* § 91A.080(3).

Plaintiffs maintain that the putative Defendant class, in complying with KRS § 91A.080, violated KRS § 304.12-190, entitled "Illegal dealing in premiums." The statute, which is within the provisions of the Kentucky Insurance Code, prohibits insurers from "willfully collect[ing] as premium or charge for insurance any sum in excess of the amount actually expended or in due course to be expended for insurance applicable to the subject on account of which the premium was collected or charged." KRS § 304.12-190(2).

Defendants maintain that this claim by Plaintiffs (Count I) as well as Plaintiffs' other claims all rest upon the allegation that they were charged illegal insurance premium taxes. They submit that the Kentucky legislature has provided a specific administrative procedure for addressing insurance claims, that Plaintiffs sue for a violation of the insurance code, and therefore their claims are governed by and must be processed through this available administrative avenue. That administrative procedure calls for Plaintiff policyholders to file a written complaint with the insurance commissioner who, Defendants point out, has

-12-

special expertise in this area.  By statute, the Commissioner "shall review, and investigate where applicable, all written complaints involving entities or individuals engaged in the business of insurance in Kentucky." KRS § 304.2-165(1).  The policyholder may apply for a hearing if dissatisfied with the Commissioner's finding, and appeal the Commissioner's final order to the Franklin Circuit Court if so desired.  Defendants contend this administrative process is mandatory for Plaintiff's claim for violation of the insurance code, and that this Court should defer to the  Commissioner for processing as to the rest of Plaintiffs' claims since they all arise from this same conduct.

In response, Plaintiffs submit that neither KRS § 91A.080 nor Chapter 304 (insurance code) require policyholders charged an illegal tax and collection fee to submit to the administrative process as their exclusive procedural device.  Plaintiffs maintain that, while Chapter 304 allows for the Commissioner to assess penalties against insurance companies for various infractions of the code, the chapter fails to provide for an express remedy to policyholders for overbilling.  Plaintiffs rely upon KRS 446.070 as the vehicle for providing them with a private cause of action against their insurers for violation of KRS § 304.12-190.

After considering the arguments of the parties, the Court concludes Plaintiffs are not bound by or limited to KRS § 304.2-165 for presentation of their claims.  The Kentucky Supreme Court, in *State Farm v. Reeder,* 763 S.W.2d 116 (Ky. 1989) found that a private right of action for damages for violation of a provision of the insurance code was available to an insured, rather than being restricted to administratively exhausting their claim pursuant to KRS § 304.2-165.  Defendants suggest that the 2000 amendments to KRS § 304.2-165 have altered the precedential value of *Reeder* by broadening the

-13-

Commissioner's authority to encompass not just written complaints about a health insurer, as the statute previously read, but rather complaints about *all* insurers. They further note that while the prior version of the statute called for the Commissioner to issue a "recommendation," the 2000 amendment now calls upon the Commissioner to make a "finding."

The Court, however, does not believe that the 2000 amendments so significantly alter the landscape as far as private causes of action for damages by policyholders. As Plaintiffs point out, in recognizing the policyholder's ability to pursue a civil action for damages for an insurer's alleged violation of an insurance code provision, the *Reeder* court was not focused on the distinction of whether the statutory administrative process governed only health insurance complaints rather than all complaints. Its emphasis was upon the fact that KRS § 304.12-230 neither expressly provided for an individual claim for damages nor for the insurance commissioner to be its sole enforcer, thereby permitting a private claim for damages as supported by KRS § 446.070.

Similarly here, KRS § 304.12-190 does not provide for an individual claim for damages. Nor does it state that the insurance commissioner is to be its sole enforcer. While KRS § 304.2-165 may have been amended, KRS § 304.12-190 has not. KRS § 304.12-190 states simply that violation of the section is punishable as provided in subtitle 99, and subtitle 99 does not provide for a civil remedy. In this regard, Plaintiffs' ability to pursue a civil suit based upon this statute is no different from the civil avenue recognized by *Reeder*. KRS § 304.2-165 is but *a* vehicle for lodging some form of dissatisfaction with an insurer, rather than *the* vehicle. Defendants protest that KRS § 304.12-165 does have a remedy specified within it and that Plaintiffs cannot just employ KRS § 446.070 because

-14-

they do not like the remedy that is already provided within KRS § 304.12-165. But that remedy is not in the form of recovery from the offender of the actual damages sustained.

Some of the Defendants challenge Plaintiffs' reliance upon KRS § 446.070 as allowing them to pursue a claim for violation of KRS § 304.12-190, arguing Plaintiffs are not among those intended to be protected by the statute. Recognized as the codification of the *negligence per se* doctrine, KRS § 446.070 provides that

> A person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation although a penalty or forfeiture is imposed for such violation.

The statute "creates a private right of action for the violation of any statute so long as the plaintiff belongs to the class intended to be protected by the statute." *Reeder*, 763 S.W.2d at 118. While KRS § 304.12-190 is among those statutes within the insurance commissioner's arsenal utilized to regulate the conduct of insurers doing business within the Commonwealth, that this statute is also intended to protect the insurance-buying public is axiomatic, particularly given the directive of KRS § 446.080(1) that "all statutes of this state shall be liberally construed with a view to promote their objects...." While the Insurance Code provides oversight of the insurance industry, one of the purposes of that oversight is the protection of the insurance-buying public.

In sum, the Court finds that Plaintiffs' private cause of action for civil damages for violation of KRS § 304.12-190 via KRS § 446.070 is neither preempted nor precluded by KRS § 304.12-165. Plaintiffs' failure to lodge a written complaint with the commissioner concerning the alleged unlawfully charged local premium taxes does not otherwise bar the within action for failure to exhaust administrative remedies. Finding Plaintiffs' statutory claim is not preempted, the Court sees no reason to refer this claim to the insurance

-15-

commissioner and defer to its processing thereof. While some of the Defendants contend that the Court should "defer" to the insurance commissioner so as to proceed utilizing his expertise, encouraging this court to exercise "judicial restraint" and proper judicial administration by first deferring to exhaustion of other state administrative remedies. Plaintiffs have chosen to pursue civil damages and will be permitted to move forward with that choice.

Having concluded Plaintiffs may pursue a civil claim for violation of KRS § 304.12-190, some of the Defendants nonetheless contend this claim should be dismissed because Plaintiffs factually have failed to state a claim for violation of the statute. One, Defendants point out the statute prohibits collection of any sum as a premium or charge for insurance, with insurance not then being provided. Since insurance was provided here, the statute was not violated. Second, they maintain that if premiums or charges were erroneously collected, Plaintiffs fail to articulate how it is that Defendants "willfully or knowingly" failed to return these funds.

These points deal with matters of statutory interpretation that need not be resolved at this preliminary stage. For example, while insurance may have been provided Plaintiffs, the charges alleged to be erroneously levied were not associated with the insurance that was actually provided. As to the statute's referenced mental intent in not returning excess charges, Plaintiffs point out that the Office of Insurance's own advisory opinion reflects it views an insurer's failure to return to the policyholder overpaid taxes or fees refunded to the insurer by the local government authority pursuant to KRS § 91A.080 as constituting illegal dealings in premiums violative of KRS § 304.12-190(3), and for which the

-16-

Commissioner can take action against the insurer under subtitle 99's penalty provisions.[8] The Court views pleading the mental intent aspect of the statute more simply. Intent may be alleged generally, since facts supporting such a conclusion often must be acquired by discovery, with the interpretation of the statute and the evidence supporting that interpretation more appropriately addressed in post-discovery dispositive filings.

Defendants also pose that this action is actually a collection or tax refund case and the Court should mandate that it be pursued as such.[9] To support this position, Defendants cite to several cases where suit was filed against various airlines seeking refund of an erroneously imposed tax on air transportation. In those cases, the courts concluded that the exclusive remedy was for plaintiff air passengers to apply for a tax refund under the Internal Revenue Code's procedures. Employing the reasoning of these cases, Defendants submit Plaintiffs' efforts herein are essentially aimed at receiving a refund of taxes charged them and so the Court should compel them to pursue such via a state statutory and/or common law tax refund suit.

---

[8]Defendants point to this advisory opinion as supporting their administrative exhaustion and primary jurisdiction argument. That is, they offer that an additional reason for having Plaintiffs proceed via the administrative procedure is because under the Insurance Code, insurers can pursue refunds of overpayments from local governments, and logically these refunds can then be returned to policyholders. While this may facilitate an insurer's processing of erroneously charged and remitted local premium taxes, the policyholder's ability to seek a remedy is not conditioned upon the insurer first procuring a refund from local government.

[9]Defendants also posed that this case is more in the nature of a traditional collection action. The Court summarily rejects this characterization. Defendants argued it applied since the language of the statutes, regulations, and Office of Insurance descriptions refer to insurers "collecting" and remitting the taxes. The word "collection" has no legal significance insofar as either rendering the policyholder responsible to the local government authority for the tax or making this into a collection action. These same provisions also refer to premiums being "collected."

-17-

However, the airline and other state cases Defendants rely upon by analogy differ in critical ways from this case.  In those cases, the statute provided that the tax was imposed on air transportation *to be paid by the person making the air transportation payment subject to the tax.*  In other words, the ticket purchasers were the taxpayers. Here, the tax is imposed upon the insurers as a privilege of doing business in the state. The computation of the tax is driven by premiums paid for policies issued, but the tax itself is owed by the insurer.  Plaintiffs do not sue for violation of KRS § 91A.080, the taxing statute.  Rather, sums collected based upon this statute form the basis of the excess premium and charges referred to KRS § 304.12-190, the statute pursuant to which Plaintiffs bring their private cause of action.  Thus, this statute is not a tax statute and Plaintiffs are not the persons upon whom the charge is imposed by the taxing governmental authority.  Nor would a tax refund suit address the additional issue of improperly charged and collected fees of the insurer. For all of these reasons, Defendants' request to dismiss or construe this action as a tax refund suit is rejected.

These same airline cases relied upon by Defendants also make general reference to the airlines acting as a government agent in collecting the air transportation tax imposed upon the air travelers.  Defendants also seize upon this point to argue herein that they similarly serve in the role as agent for the local governments in the collection of taxes and, as such, are entitled to qualified immunity for their actions as government actors.  The nuances of qualified immunity under Kentucky law need not be addressed, since Defendants are not in fact government tax collection agents; they are the taxpayer.  The plain language of the statute imposes a local government tax upon insurance companies for the privilege of doing business in the state.

### (2)   Fraud

In Count II of their Amended Complaint, Plaintiffs sue the putative Defendant class under a state-law fraud theory. Both the Kentucky and Federal Civil Rules provide that "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Ky. R. Civ. P. 9.02; Fed. R. Civ. P. 9(b). Thus, under both state and federal procedural law, fraud must be pled with specificity. But as the Sixth Circuit has also cautioned:

> However, when deciding a motion to dismiss under Rule 9(b) for failure to plead fraud with particularity, a court must also consider the policy favoring simplicity in pleading, codified in the short and plain statement of the claim requirement of Federal Rule of Civil Procedure 8. As we have noted, Rule 9(b)'s particularity requirement does not mute the general principles set out in Rule 8; rather, the two rules must be read in harmony. . . . On the other hand, a district court need not accept claims that consist of no more than mere assertions and unsupported or unsupportable conclusions.

*Sanderson v. HCA-The Healthcare Co.,* 447 F.3d 873, 876 (6th Cir. 2006)(citations omitted).

An action for common law fraud in Kentucky requires plaintiff establish by clear and convincing evidence there was a) a material representation b) which was false, c) known to be false or made recklessly, d) made with inducement to be acted upon, e) acted in reliance thereon, and f) causing injury. *UPS v. Rickert,* 996 S.W.2d 464, 468 (Ky. 1999). In considering whether fraud has been adequately pled, Plaintiffs' well-pleaded facts and reasonable inferences are accepted as true, with the claim surviving, unless it can be said beyond doubt that Plaintiffs can prove no set of facts in support of their claim that would

-19-

entitle them to relief. *Sanderson,* 447 F.3d at 876; *Yuhasz v. Brush Wellman, Inc.,* 341 F.3d 559, 563 (6th Cir. 2003).

Plaintiffs' fraud claim alleges the billing documents and declaration sheets sent to them by Defendants "willfully and fraudulently misrepresented" taxes and collection fees owed, misrepresentations because Defendants have knowledge via the insurance commissioner of the legitimate tax that should have been charged and, despite this, made the misrepresentations anyway. Plaintiffs posit they accepted and thereby relied upon these representations as legitimate and accurate in that they paid the charges stated, to their detriment. In other words, Plaintiffs protest that the Defendant insurers did not just negligently fail to add what should have been the correct local premium tax on their billings, if applicable to their policy, but willfully and recklessly did so.

But those Defendants challenging this Count insist that more is required to constitute a sufficiently pled claim of fraud under Civil Rule 9. That is, Plaintiffs must at least "allege the time, place, and content of the alleged misrepresentations on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Yuhasz,* 341 F.3d at 563. Because Plaintiffs make no allegations about the specific content of the misrepresentations, how they were made and by whom, and how Plaintiffs were induced to rely upon them, Defendants argue this claim should be dismissed.

Despite Defendants' protests, the Court finds Plaintiffs have sufficiently pled their claim of fraud to survive a threshold dismissal. In assessing the sufficiency of Plaintiffs' contentions, the Sixth Circuit's decision in *Michaels Building Co. v. Ameritrust Co., N.A.,* 848 F.2d 674 (6th Cir. 1988) is instructive. As cautioned in that case, the purpose of the

particularity requirement is to provide fair notice so that the defendant may prepare a responsive pleading. *Id.* at 679. This purpose has been reasonably met by Plaintiffs' filing herein.

Certainly Defendants are on notice of the general billing circumstance being challenged here by Plaintiffs, that Plaintiffs would be relying upon billings issued by a Defendant and received by a Plaintiff to be accurate, intend that Plaintiffs act upon these billings by making payment of them, and thereby sustain injury because the billings were, in fact, incorrect. To the extent Defendants suggest that transaction-by-transaction detail is required to be set forth to substantiate the claim, the Court disagrees. Such would make the Amended Complaint unwieldy while adding little benefit to Defendants' knowledge of the of the claim.

And of course fraud also implicates a defendant's intent. Movants contend that Plaintiffs have not asserted any specific facts that, if accepted as true, support viewing Defendants' billing practices as not just negligent but also willful and/or reckless. However, the civil rules permit the extent of knowledge and intent to be alleged generally. This seems appropriate, since the extent to which Defendants may have been aware of the errors being made, or potential of errors being made, and any acts taken or not taken based upon such information are matters within Defendant's knowledge. In such a circumstance, the rule of pleading details is relaxed. *Michaels Bldg. Co.,* 848 F.2d at 680. In *Michaels Building,* plaintiff alleged fraudulent misrepresentations were made by the defendant banks, a putative class, in furtherance of a sub-prime lending scheme. The court deemed the fraud allegations sufficient to survive a threshold motion to dismiss, since "[e]specially in a case in which there has been no discovery, courts have been reluctant

-21-

to dismiss the action where the facts underlying the claims are within the defendant's control." *Id.* Similar circumstances are presented here. Requiring Plaintiffs to plead specific facts evidencing Defendants' knowledge of the falsity and/or recklessness of their actions, rather than permitting such to be alleged generally, puts the cart before the horse, even with a claim of fraud.

### (3)     Conversion

Several Defendants join in seeking dismissal of Count III of the Amended Complaint, alleging it fails to state a claim against them. They argue Plaintiffs cannot sue them for conversion under Kentucky law because Plaintiffs cannot in good faith establish the necessary requirements for such a claim. Defendants submit that, pursuant to recent pronouncements of the Kentucky courts, conversion requires proof that (1) plaintiff has legal title to the converted property; (2) plaintiff had possession or the right to possession at the time of conversion; (3) defendant exercised dominion over the property, to defendant's use and enjoyment, such that plaintiff's right to use and enjoy the property was denied; (4) defendant intended to interfere with plaintiff's possession; (5) plaintiff made some demand for the property's return which defendant refused; (6) defendant's action caused plaintiff's loss of the property; and (7) plaintiff was damaged thereby. *Kentucky Ass'n of Counties All Lines Fund Trust v. McClendon,* 157 S.W.3d 626, 632 n.12 (Ky. 2005)(quoting 90 C.J.S. *Trover and Conversion* § 4 (2004); *Meade v. Richardson Fuel, Inc.,* 166 S.W.3d 55, 58 (Ky. Ct. App. 2005).

The crux of Defendants' argument on this claim is that, regardless of how broadly Plaintiffs' Amended Complaint is construed, Plaintiffs have not and cannot plead that they

-22-

made demand for the property's return and were refused, or that the Defendants insurers put the property to their own use and enjoyment.

In response, Plaintiffs maintain that Defendants have employed an overly-technical spin on this claim. They argue that since not all of the improperly collected taxes were paid over to local governments, holding those monies would be of use and benefit to Defendant, as would be the collection fee charged policyholders for the collection of local premium taxes. As for the requirements of a demand for return and refusal, they submit that this is not a standard requirement of all conversion claims, even under Kentucky law. Relying upon an older Kentucky case, *Joseph Goldberger Iron Co. v. Cincinnati Iron & Steel Co.,* 154 S.W. 374 (Ky. 1913), Plaintiffs submit that demand and refusal are unnecessary where there is action under duress and that here, the billings were paid under duress in order to avoid, for example, driving without insurance or breaching one's mortgage obligations.

The Court finds that Plaintiffs have sufficiently pled a claim for conversion. While *McClendon,* the decision so heavily relied upon by Defendants, may be a more recent indication from the Kentucky Supreme Court on the parameters for suing on this tort, there is no indication it was intended to nor does it address all considerations when pursuing a conversion claim. Indeed, in both *McClendon* and *Meade,* whether a demand was made and refused was not at issue, as both courts ruled the claim was not viable for other reasons. *McClendon,* 157 S.W.3d at 632-33; *Meade,* 166 S.W.3d at 58.

Plaintiffs' reliance upon *Joseph Goldberger Iron Co.* is not misplaced. Despite its age, the case is instructive in comprehending the common law tort of conversion. Indeed, the same question posed by Defendants herein was posed in *Goldberger.*

> Was a demand on the "Goldberger Iron Company" for a return of the machine necessary before the plaintiff could maintain an action for its conversion? . . . .
>
> The rule is that where an actual conversion is alleged, as here, an averment of demand and refusal is not required. Or, as stated by Chitty: "In the case of a conversion by wrongfully taking, it is not necessary to prove a demand and refusal; and the intent of the party is immaterial; and if defendant acted under the supposition that he was justified in what he did or as the servant of, and for the benefit of, another person, he will be equally liable to this action." 1 Chitty's Pleading, 153. The reason for the rule is that, while a demand and refusal may afford satisfactory evidence of a conversion, they do not constitute the only evidence by which a conversion may be proved, since any wrongful exercise or dominion over chattels to the exclusion of the rights of the owner, or a withholding of them from his possession under a claim inconsistent with his rights, constitutes a conversion.

*Joseph Goldberger Iron Co.,* 154 S.W. at 375. Thus, there is a distinction where conversion has occurred by way of a wrongful taking at the outset and lawful taking at the outset which then becomes wrongful. In the former, demand and refusal need not be proved, which is logical since the taking is hostile at the forefront and demand for its return likely futile. This distinction is also recognized in the legal treatise looked to by the *McClendon* court. *See* CJS *Trover* § 3 (2007)("Conversion is of two classes: where the possession is originally wrongful and where originally rightful possession becomes wrongful by wrongful detention.").

There is no indication from *McClendon, Meade,* or any other Kentucky decision that *Goldberger* is no longer authoritative. *Goldberger* is also cited in this same secondary treatise for its examination on this point of demand and refusal. *See* CJS *Trover* § 78 (2007)(ultimate fact to be pleaded is the conversion; if such is alleged, "it is not necessary that the declaration, petition, or complaint also allege that a demand was made on the

-24-

defendant for the property before instituting the suit and that the defendant refused to deliver it.").

The present motions seek to dismiss this claim for failure to adequately plead. Both *McClendon* and *Meade* were before the court in different procedural postures, *McClendon* on summary judgment and *Meade* post-master commissioner hearing.[10]   Their consideration of the conversion claim was as to the merits. *Goldberger*, on the other hand, directly discusses what would be necessary in order to adequately *plead* conversion.

> "It is contended that, where the property of one person has lawfully come into the possession of another, a refusal by the latter to deliver it to the owner on his demand is necessary to constitute a conversion of it, and therefore the petition, in an action for its conversion, must contain an allegation of such demand and refusal. The allegation is not essential. A refusal to deliver the property on demand of the owner may show such an assumption of ownership or control of it as to afford satisfactory evidence of a conversion, but it is only evidence. The ultimate fact to be pleaded is the conversion; and, in actions of that nature, a petition with proper allegations of plaintiff's ownership of the property and of its value, and which avers that the defendant converted it to his own use, states a cause of action."

*Joseph Goldberger Iron Co.,* 154 S.W. at 375-76 (quoting *B. O. R. R. Co. v. O'Donnell,* 32 N.E. 476 (Ohio 1892).

With these principles in mind, Plaintiffs' conversion claim survives a threshold dismissal challenge. Plaintiffs have sufficiently alleged a conversion. The extent to which demand and refusal may ultimately be in issue and the required proof necessary will depend upon Plaintiffs' intentions in presenting this claim as either a wrongful taking from

---

[10]*McClendon* also raises other questions about the characterization of the claim itself, such as whether the suit is in actuality a collection action. To the extent Defendants also advanced similar arguments in challenging the conversion claim (i.e., that this is actually a collection action or tax refund case), those contentions were previously addressed herein.

the outset, or a lawful taking subsequently converted to a wrongful one.  The necessary and extent of that is for later consideration on the merits of the claim.

### (4)   Negligent Misrepresentation and Negligent Servicing

Defendants Stewart Title and Nationwide raise a threshold challenge to Count IV of the Complaint.  Actually, Defendant Stewart Title seeks dismissal as a party Defendant for failure to state *any* claim against it upon which relief may be granted.  It points out that, aside from the case caption, there are no allegations against it specifically anywhere in the Amended Complaint.

In response, Plaintiffs profess to a pleading error relative to this Defendant.  They note that the unnumbered paragraph of their Amended Complaint following paragraph 91 refers to Plaintiff Charles Hamilton and that Mr. Hamilton is the named Plaintiff who transacted with Stewart Title.  They also point to Exhibit K to the Amended Complaint, a HUD closing statement, as being part of the insurance transaction involving Stewart Title. They ask for leave to amend their Complaint, should these references be deemed insufficient.

Under Civil Rule 15(a), leave to amend should be freely given when justice so requires.  Here, while the filing of a motion and tendered amendment contemporaneous with Plaintiffs' response would have been a practical decision, the failure to so formally move is not a basis to deny Plaintiffs' request. *See Southern Elec. Health Fund v. Heritage Mutual Ins.,* 147 Fed. App'x. 497, 504 (6th Cir. 2005)(noting no specific procedure mandated by Rule 15 for obtaining leave to amend).  Here, there is no indication the inadvertent omission of Stewart Title was for purposes of creating undue delay, or

-26-

otherwise in bad faith, or that amendment would result in any undue prejudice to this or any of the other Defendants. Nor has Stewart Title voiced anything in reply that would otherwise change these considerations. The Court therefore will deny Defendant Stewart Title's motion to dismiss this or the other claims set forth in the Amended Complaint for failing to plead against it, in favor of granting Plaintiffs leave to amend. To the extent Stewart Title raises other substantive challenges to Plaintiffs' claims, they are considered along with those of the other moving Defendants.

Defendant Nationwide seeks to dismiss this claim because, it submits, Plaintiffs cannot sue in tort for what is actually a breach of contract claim. In determining this to be the case, Defendant offers that, under Kentucky law, "A breach of a duty which arises under the provisions of a contract between the parties must be redressed under contract, and a tort action will not lie. A breach of a duty *arising independently* of any contract duties between the parties, however, may support a tort action." *Presnell Construction Mgrs., Inc. v. EH Construc., LLC,* 134 S.W.3d 575, 589 (Ky. 2004)(Keller, J., concurring)(emphasis in original). Nationwide contends that, using this standard, the duty to apply an accurate tax rate runs to these Plaintiffs "based on the contract" between it and its insureds. And as to the additional collection fee, Defendant contends it had no duty *not* to charge additional fees because the local premium tax statute expressly authorizes it to do so. Finally, Nationwide argues that Plaintiffs have failed to adequately allege the requirements for a negligent misrepresentation claim.

The Court finds Defendant's arguments in support of dismissing this Count unpersuasive. Although Nationwide describes the duty to charge accurate local premium taxes as "based on" and "arising" from its contract of insurance with its insureds, it does

-27-

so in conclusory fashion, never actually articulating the contractual provisions that give rise to such duty. And as to any duty not to charge a collection fee over and above the tax itself, Defendant skirts the source of duty analysis entirely, noting simply that there is no duty. Assuming arguendo that there is such a duty, it is imposed via the statute, and Defendant references no provision of the insurance contract to suggest to the Court otherwise. Thus, while these allegations are connected or associated with the insurance contract in that any purported duties arise only when an insurance contract exists, these duties are not duties under the actual contract. Nationwide's assertion that the claim is insufficient pled in the Amended Complaint is also without merit. Plaintiffs' response on this point details the contents of the Amended Complaint and articulates the basis for the claim in a fashion sufficient for notice pleading.

### (5)    Fiduciary Duty

Count V of the Amended Complaint asserts that Defendants breached a fiduciary duty to Plaintiffs by allegedly charging them excessive premium taxes and fees. A few of the Defendants challenge Plaintiffs' ability to make such a claim against them under Kentucky law.

Defendants submit Kentucky law recognizes a fiduciary duty in the insurance context only with respect to the duty to defend and indemnify the insured. They further submit that there is no fiduciary duty imposed with an insurer's collection of insurance premium taxes. Rather, the duty arises only out of the insurance contract and in situations involving the contractual duties of defense and indemnification. Simply put, there is no legal basis to assert Defendants owed a fiduciary duty to Plaintiffs with respect to collection

-28-

of premium taxes required by local governments and so a fiduciary duty claim cannot be stated against them as a matter of law.

Plaintiffs offer that Kentucky law recognizes a fiduciary relationship between insurers authorized to do business of insurance in the state and their customers. This relationship, according to Plaintiffs, fosters a sense of confidence and trust that is not to be abused. The relationship requires Defendants to provide their customers, including Plaintiffs, with the benefits of insurance without overcharging them. Instead, allege Plaintiffs, the Defendants engaged in self-dealing and unfair advantage, in breach of their fiduciary duty. Plaintiffs acknowledge there is no Kentucky decision addressing whether a fiduciary duty is imposed in this particular premium tax and collection fee circumstance, but submit this does not end the inquiry. That is, just because the issue has not been presented does not equate with a finding that a fiduciary duty in this context would not be recognized. Rather, Kentucky law on fiduciary relationships sets the boundaries on whether such a duty existed.

Kentucky law recognizes that implication of fiduciary relationships cannot be precisely defined, given that the circumstances giving rise to them can vary. *Davis v. Stockyards Bank Trust Co.,* 2005 WL 1490459, at *3 (Ky. Ct. App. 2005), *discretionary review denied* Apr. 12, 2006. Generally, the relationship is "founded on trust or confidence reposed by one person in the integrity and fidelity of another ... in which a duty is created in one person to act primarily for another benefit in matters connected with such undertaking." *Id.; Monumental Life Ins. Co. v. Nationwide Retirement Solutions, Inc.,* 242 F. Supp.2d 438, 449 (W.D. Ky. 2003). In the context of insurance, Kentucky law imposes a fiduciary duty upon an insurer for the benefit of an insured based upon the relationship

-29-

between them arising from the insurance contract. *Farmland Mut. Ins. Co. v. Johnson,* 36 S.W.3d 368, 380 (Ky. 2000).

Here, to determine whether a fiduciary duty is imposed therefore necessitates consideration of the extent to which the subject matter relates to or is connected with the insurance contract. In *Monumental Life*, a life insurance company entered into a general agency agreement with a company that sold and administered retirement plans to government employees. When the company reduced the commissions paid to its field agents on life sales, the insurer argued the company had breached a fiduciary duty. The court disagreed, finding the commission reduction related to the duty to sell plans to employees, "a responsibility that goes beyond the scope of the agreement and thus the agency relationship." *Monumental Life,* 242 F. Supp. 2d at 449. Under those circumstances, no fiduciary duty was owed or breached, the court noting that the agreement determining the duties between the parties was complex and negotiated at arms length. *Id.*

Defendant Stewart Title argues this claim must fail because there is no allegation of a relationship founded on trust or confidence related to an insurer's statutory obligation to pay tax. Instead, the insurance contract represents a typical arms-length transaction between it and the Plaintiffs with whom it contracted, with the statutory tax obligation going beyond the scope of that agreement. Plaintiffs contend otherwise.

At issue in this case is the accuracy and legality of the premium tax charged and collected and related fee assessments. These questions are implicated precisely because of the insurance contractual relationship; it is not the insurer doing business generally for which local taxes are imposed, but rather the sale of an actual policy and the premiums

-30-

paid in exchange for it by Plaintiff.  The nature and circumstance of the imposing the tax/fee charge are not beyond the scope of the insurance contract relationship but instead sufficiently connected and related to the contract to give rise to a fiduciary duty. Accordingly, the Court finds Plaintiffs' fiduciary duty claim is sufficiently alleged to survive threshold dismissal.

### (6)    Civil Conspiracy and Vicarious Liability

Count VI of Plaintiffs' Amended Complaint alleges that Defendants conspired with their "agents and employees" to carry out the breach of fiduciary duty owed to Plaintiffs and to charge erroneous local government premium taxes and collection fees.  As noted in *James v. Wilson,* 95 S.W.3d 875, 896 (Ky. Ct. App. 2002), civil conspiracy is a topic rarely dealt with in Kentucky case law.  It is defined as "a corrupt or unlawful combination or agreement between two or more persons to do by concert of action an unlawful act, or to do a lawful act by unlawful means."  *Smith v. Board of Ed. of Ludlow, Ky.,* 94 S.W.2d 321, 325 (Ky. 1936).

The Defendants seeking dismissal of Plaintiffs' civil conspiracy claim assert Plaintiffs are unable to allege the involvement of "two or more persons," given the intra-corporate conspiracy doctrine.  That is, that a corporate entity cannot conspire with its own agents or employees.  While this principle has been recognized in the context of federal case law, Kentucky law on the doctrine is virtually non-existent, which is likely why all of the moving Defendants cite to Sixth Circuit and other authorities.  A recent appellate court decision, *Biber v. Duplicator Sales & Service, Inc.,* 155 S.W.3d 732 (Ky. Ct. App. 2004), held that Kentucky does not recognize the "intra-corporate immunity rule" in the context of a

-31-

defamation action, thereby permitting plaintiff to seek recovery for defamatory intra-corporate communications. And in *Davenport's Administratrix v. Crummies Creek Coal Co.,* 184 S.W.2d 887 (Ky. 1945), the court upheld as stating a valid claim of conspiracy allegations that a company *and its employee clerks* conspired to shoot striking members of the United Mine Workers if they entered the store house, which resulted in the death of plaintiff's decedent. However, whether intra-corporate immunity applied was not at issue in *Davenport's Administratrix.*

Thus, how the intra-corporate conspiracy doctrine would be viewed and whether it would be adopted in Kentucky is unknown. This Court, on unresolved issues of state law, must try to reasonably predict what the Kentucky courts would do if presented with the question. Given the present overwhelming acceptance of the doctrine, to conclude Kentucky would not do likewise seems tenuous. However, the Court need not make this determination. In their responsive filings, Plaintiffs do not contest and in fact agree to the application of the doctrine, at least as to the Defendant insurers' actual employees and employee agents. However, Plaintiffs do not accept that a civil conspiracy claim cannot lie for conspiring with one deemed a true independent agent.

Count VIII of the Amended Complaint alleges that Defendants are vicariously liable for the acts of "their agents, employees, subagents or anyone who participates with or on behalf of the Defendants" in collecting the subject local premium taxes and fees.[11] While

---

[11]A few of the Defendants seek dismissal of this claim, arguing that Plaintiffs fail to identify an agent or employee of that particular Defendant for whose conduct it would be vicariously liable. The Court does not view this lack of specificity at the pleading stage fatal to the claim, as the intent of the assertion should be reasonably clear to Defendants. That is, while the pre-discovery identity of Defendant's employees for whom it may be vicariously liable is not yet known, that an insurer would be vicariously liable for the conduct of its employee once identified.

-32-

Plaintiffs submit that Defendants can be charged with civilly conspiring with one deemed an independent contractor, they implicitly acknowledge in their responses that Defendants cannot be held vicariously liable for an independent contractor's acts or omissions. *Williamson v. Kentucky Dep't of Educ.,* 113 S.W.3d 145, 151 (Ky. 2003)("Under common law principles of agency, a principal is vicariously liable for damages caused by torts of commission or omission of an agent or subagent, other than an independent contractor, acting on behalf of and pursuant to the authority of the principal."). In other words, since vicarious liability cannot be imposed for the actions of an independent contractor, the independence or separateness of that conduct conversely subjects Defendants to the legal contention that they conspired with such independent actor in the course of collecting the subject tax and fees.

The Court finds that pending further proceedings, sufficient questions remains as to the application of civil conspiracy and vicarious liability to permit Plaintiffs to move forward on these theories. However, their viability is limited to those legally considered independent contractors for the civil conspiracy theory, and those legally considered employees (rather than independent contractors) for the vicarious liability theory.[12]

---

[12]Some Defendants also seek dismissal of the Count for vicarious liability on the basis that it is a legal doctrine, rather than a separate claim or legal theory. Dismissal on this basis has some appeal; however, Kentucky courts have also referred to the doctrine as a legal theory. *See, e.g., Williams v. Ky. Dep't of Educ.,* 113 S.W.3d 145, 155 (Ky. 2003)(referring to suing in the Kentucky Board of Claims "on a theory of vicarious liability"). At least for the time being, rather than become engrossed in the semantics of whether such is a doctrine or legal theory of recovery, for housekeeping and tracking purposes it will remain labeled as a separate count.

### (7)    Declaration of Rights

Defendants Stewart Title and Nationwide further seek dismissal of Plaintiffs' claim for declaratory judgment. Count VII of the Amended Complaint seeks a declaration that Defendants cannot charge collection fees in addition to the local premium tax and that they must disgorge any benefits received from having done so.

The relevant statutory provision states:

> The Office of Insurance shall, by administrative regulation, provide for a reasonable collection fee *to be retained* by the insurance company or its agent as compensation for collecting the tax, except that the collection fee shall not be more than fifteen percent (15%) *of the fee or tax collected and remitted* . . . or two percent (2%) of the premiums subject to the tax, which is less.

KRS § 91A.080(4)(emphasis added). Plaintiffs contend Defendants have been unlawfully adding the collection fee over and above the tax, contrary to the statute, instead of retaining a portion of the tax.

In seeking to dismiss this claim, Defendants note that the statute gives the Office of Insurance regulatory power to provide for a reasonable collection fee. That is, the statute allows them a fee, and the Office of Insurance, pursuant to regulation, instructs them on accounting for this fee. That regulation states:

> A reasonable collection fee *shall be an amount equal to fifteen (15) percent* of the license fee or tax collected and remitted . . . or two (2) percent of the premium subject to the license fee or tax, whichever is less.

806 KAR 2:090(1)(emphasis added). Defendants also point out that the Office of Insurance has interpreted this regulation as providing for collection fees in addition to the tax collected. In fact, the instructions accompanying the tax transmittal form expressly state that "The collection fee is an 'add-on' and cannot be deducted from the tax payable."

-34-

Given these circumstances, argue Defendants, the Office of Insurance has authorized them to collect the fee as an add-on and, therefore, the relief Plaintiffs seek flies in the face of clear legislative authority.

While these Defendants assert that the Office of Insurance's regulation provides clear legislative authority for their actions, they stop short of asserting that such authority serves as an affirmative defense or otherwise renders them immune from suit. At present, Plaintiffs challenge the Defendants' interpretation and application of the law permitting them to collect this fee over and above the tax itself. Absent some authority from Defendants that their completion of the remittance forms and the acceptance of those forms by the Office of Insurance legally exonerates them from liability, the Court finds this Count should not be dismissed as failing to state a claim.

### Conclusion

In summary, virtually all of Plaintiffs' claims survive at least a threshold Rule 12(b) attack. However, as the case advances to the next phase of case management and request for class certification, a cautionary word is warranted. That is, just because a claim can be asserted does not necessarily mean that it should be. The depth and breadth of what Plaintiffs seek to do accomplish here is substantial, with the Court's expectations as to all counsel's focus, preparation, participation, and recommendations no less so. This being said,

Accordingly, **IT IS ORDERED** that:

(1)      Plaintiffs' Motion to Remand (Doc. #51) is hereby **denied.**

-35-

(2)     Defendants' Motions to Dismiss (Docs. #18, #36, #47, #50, #53, #55, #61, #62, #74, #77, #111, and #112) are hereby **denied.**

(3)     This matter is hereby scheduled for a **status call/case management conference** on **May 3, 2007, at 1:00 p.m.**

(4)     Not later than **April 25, 2007,** the parties shall file a joint proposed case management plan, to the extent possible; otherwise, an individual filing can be made.

This $\mathcal{3/st}$ day of March, 2007.



Signed By:
David L. Bunning
United States District Judge

G:\DATA\Opinions\2-06-141-KendrickMotions.wpd

-36-