IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
COVINGTON DIVISION

| | |
|---|---|
| L. CRAIG KENDRICK,<br>ROBERT and JOHNNA DYAS,<br>DONALD and SUZANNE WILSON,<br>JASON and DIANNA YOUNG,<br>JOHN NICHOLAS,<br>MARTHA YUNKER, and<br>KARLA MCCULLOUGH,<br>          Plaintiffs,<br><br>   v.<br><br>STATE FARM FIRE AND CASUALTY<br>INSURANCE CO.,<br>STATE FARM AUTO INSURANCE CO.,<br>NATIONWIDE MUTUAL INSURANCE<br>CO.,<br>OHIO CASUALTY INSURANCE CO.,<br>WEST AMERICAN INSURANCE CO.,<br>STANDARD FIRE INSURANCE CO.,<br>TRAVELERS INSURANCE CO., and<br>AMERICAN INTERNATIONAL SOUTH<br>INSURANCE CO.,<br>          Defendants. | Judge David L. Bunning<br>Civil Action No.: 06-CV-141 |

**PLAINTIFFS' MEMORANDUM IN SUPPORT
OF MOTION FOR CLASS CERTIFICATION**

## I.  INTRODUCTION

The named Plaintiffs commenced this action as a proposed class action in the District Court of Kenton County, Kentucky alleging that the Defendants improperly charged their customers local government insurance premium taxes in excess of the amount owed and may have charged an additional collection fee for premium taxes which were not owed. Plaintiffs' allegations are grounded in common law causes of action for fraud, conversion, negligent

misrepresentation and negligent servicing, breach of fiduciary duty, civil conspiracy, vicarious

liability, as well as violations of KRS § 304.12-190.  Pursuant to such violations, Plaintiffs, on

behalf of themselves and thousands of others similarly situated, seek a refund of the overpaid

local government premium taxes and of all collection fees that have been paid, punitive damages,

injunctive and declaratory relief.

Plaintiffs seek to represent the following Class:

> All persons in the Commonwealth of Kentucky who purchased insurance from or underwritten by State Farm Fire And Casualty Insurance Co., State Farm Auto Insurance Co., Nationwide Mutual Insurance Co., Ohio Casualty Insurance Co., West American Insurance Co., Standard Fire Insurance Co., Travelers Insurance Co., and American International South Insurance Co. during the Relevant Time Period (June 16, 2001, through the present) and who were charged local government taxes on their payment of premiums which were either not owed, or were at rates higher than permitted.

Plaintiffs also seek to represent the following Subclasses, which are proposed to address

the Plaintiffs' respective claims against the individual Defendants named herein.  The Subclasses

are defined as follows:

> **A.** State Farm Fire And Casualty Insurance Co. Subclass: All persons in the Commonwealth of Kentucky who purchased insurance from or underwritten by State Farm Fire And Casualty Insurance Co. during the Relevant Time Period (June 16, 2001, through the present) and who were charged local government taxes on their payment of premiums which were either not owed, or were at rates higher than permitted.

> **B.** State Farm Auto Insurance Co. Subclass: All persons in the Commonwealth of Kentucky who purchased insurance from or underwritten by State Farm Auto Insurance Co. during the Relevant Time Period (June 16, 2001, through the present) and who were charged local government taxes on their payment of premiums which were either not owed, or were at rates higher than permitted.

> **C.** Nationwide Mutual Insurance Co. Subclass: All persons in the Commonwealth of Kentucky who purchased insurance from or underwritten by Nationwide Mutual Insurance Co. during the Relevant Time Period (June 16, 2001, through the present) and who were charged local government taxes on their payment of premiums which were either not owed, or were at rates higher than permitted.

**D.** Ohio Casualty Insurance Co. Subclass: All persons in the Commonwealth of Kentucky who purchased insurance from or underwritten by Ohio Casualty Insurance Co. during the Relevant Time Period (June 16, 2001, through the present) and who were charged local government taxes on their payment of premiums which were either not owed, or were at rates higher than permitted.

**E.** West American Insurance Co. Subclass: All persons in the Commonwealth of Kentucky who purchased insurance from or underwritten by West American Insurance Co. during the Relevant Time Period (June 16, 2001, through the present) and who were charged local government taxes on their payment of premiums which were either not owed, or were at rates higher than permitted.

**F.** Standard Fire Insurance Co. Subclass: All persons in the Commonwealth of Kentucky who purchased insurance from or underwritten by Standard Fire Insurance Co. during the Relevant Time Period (June 16, 2001, through the present) and who were charged local government taxes on their payment of premiums which were either not owed, or were at rates higher than permitted.

**G.** Travelers Insurance Co. Subclass: All persons in the Commonwealth of Kentucky who purchased insurance from or underwritten by Travelers Insurance Co. during the Relevant Time Period (June 16, 2001, through the present) and who were charged local government taxes on their payment of premiums which were either not owed, or were at rates higher than permitted.

**H.** American International South Insurance Co. Subclass: All persons in the Commonwealth of Kentucky who purchased insurance from or underwritten by American International South Insurance Co. during the Relevant Time Period (June 16, 2001, through the present) and who were charged local government taxes on their payment of premiums which were either not owed, or were at rates higher than permitted.

The proposed Class and Subclasses each satisfy all of the requirements for class certification because they are readily ascertainable and otherwise meet the requirements of Federal Rule of Civil Procedure 23(a), specifically, numerosity, commonality, typicality, and adequacy.

The Class and Subclasses also meet the requirements of Rule 23(b)(3). The identified common issues predominate as all Class Members will seek to prove that the Defendants improperly charged their customers local government insurance premium taxes in excess of the amount owed and may have charged an additional Collection Fee for premium taxes that were

not owed.  In addition, it is clear that class treatment of Plaintiffs' and Class Members' claims is superior to other methods of adjudication of those claims.  The Class and Subclasses are manageable because they can readily be ascertained from the electronic records provided by the Defendants through the use of geocoding software.  Even if the class cannot be identified with 100% accuracy using the geocoding software and resort to manual identification of Class members is necessary, class certification would still be appropriate.

For these reasons and as more fully explained below, Plaintiffs' motion for class certification should be granted.

## II.      COMMON OPERATIVE FACTS

Defendants are insurers that write consumer and commercial insurance in the Commonwealth of Kentucky.  First Amended Complaint ("FAC"), ¶ 2.  By virtue of that business presence, Defendants are subject to Kentucky local government insurance premium taxes enabled by KRS § 91A.080.  FAC, ¶¶ 4-6.  By law, insurers like Defendants are allowed to collect such taxes from their policyholders, but must correctly determine where the risk is located to properly calculate, collect and remit the taxes that they owe to the respective local taxing jurisdictions.  FAC, ¶¶ 7-10.  The gravamen of Plaintiffs' complaint is that Defendant Insurers are adding local tax charges to their insurance premium - be it city, county, charter county, consolidated local government, or urban-county government taxes- along with a fee for collection of this local tax.  While KRS § 91A.080 requires that the tax be based on premiums paid to insure a risk in a particular geographic area, Defendants often tax their insureds as though the insured risk is located within one particular municipal jurisdiction, when it is in fact located in a different municipal jurisdiction.

### A.      The Parties

Plaintiff L. Craig Kendrick is a customer of Defendant Ohio Casualty Insurance Co., which insures his residence that is located in Boone County, Kentucky.   FAC, ¶¶ 26-32. Defendant Ohio Casualty Insurance Co. issued a homeowner's policy to Mr. Kendrick and included an insurance premium tax of $83.00 to his homeowner's policy premium, in addition to a collection fee.  *Id.*  Mr. Kendrick's insured risk, his residence, is not within any municipality and Boone County does not impose an insurance premium tax pursuant to KRS § 9lA.080.  *Id.*

Plaintiff Martha Yunker is a customer of Defendant Standard Fire Insurance Co., which insures her residence that is located in an unincorporated area of Boone County, Kentucky. FAC, ¶¶ 33-39.  Defendant Standard Fire Insurance Co. included an insurance premium tax of $44.00 and added such amount to her homeowner's policy premium, in addition to a collection fee.  *Id.*  Ms. Yunker's residence is not within any municipality and Boone County does not impose an insurance premium tax pursuant to KRS § 9lA.080. *Id.*

Ms. Yunker is also a customer of Defendant Travelers Property Casualty Insurance Co., which insures her automobiles that are garaged at her residence in unincorporated Boone County, Kentucky.  FAC, ¶¶ 40-44.  Travelers Property Casualty Insurance Co. included an insurance premium tax of $65.00 and added such amount to her automobile policy premium, in addition to a collection fee.  *Id*.

Plaintiff John Nicholas is a customer of Defendant West American Insurance Co., which insures a residence owned by Nicholas which is located in an unincorporated portion of Kenton County, Kentucky.   FAC, ¶¶ 49-54.   West American Insurance Co. included an insurance premium tax of $59.00 and added such amount to his insurance policy premium, in addition to a collection fee.  *Id*.  Nicholas' insured residence is not within any municipality, and at the time of

the collection of premiums and taxes complained of herein, Kenton County did not impose an insurance premium tax pursuant to KRS § 9lA.080.[1]

Plaintiffs Donald Gary Wilson and Suzanne Wilson ("Wilson") are customers of Defendant State Farm Auto Insurance Co., which insures their automobiles that are garaged in an unincorporated area of Boone County, Kentucky. FAC, ¶¶ 62 – 64. State Farm Auto Insurance Co. included a 5% insurance premium tax and added such amount to their automobile policy premiums, in addition to a collection fee. *Id.* The Wilsons' automobiles are not garaged within any municipality and Boone County does not impose an insurance premium tax pursuant to KRS § 9lA.080. *Id.*

Plaintiffs Jason and Diana Young ("Young") are customers of Defendant Nationwide Mutual Insurance Co., which insures their automobiles that are garaged in an unincorporated area of Boone County, Kentucky. FAC, ¶¶ 65-69. Nationwide Mutual Insurance Co. included an insurance premium tax of $126.00 and added such amount to their automobile policy premium, in addition to a collection fee. *Id.* The Youngs' automobiles are not garaged within any municipality and Boone County does not impose an insurance premium tax pursuant to KRS § 9lA.080. *Id.*

Plaintiffs Robert and Johnna Dyas ("Dyas") are customers of State Farm Fire and Casualty Co., which insures an insurable interest in a rental dwelling that is located in an unincorporated area of Boone County, Kentucky. FAC, ¶¶ 70 - 75. State Farm Fire And Casualty Co. included an insurance premium tax of $32.60 and added such amount to their insurance policy premium, in addition to a collection fee. *Id.* The Dyas' insurable interest is not

---

[1] Kenton County has since adopted a local government premium tax, which applies to premiums collected on risks located in the unincorporated portions of Kenton County. The tax became effective July 1, 2007.

located within any municipality and Boone County does not impose an insurance premium tax pursuant to KRS § 9lA.080.  *Id.*

Plaintiff Karla McCullough is a customer of Defendant American International South Insurance Co., which insured an automobile garaged in an unincorporated area of Kenton County.  FAC, ¶ 91; *see also* Letter from Ryan Hupp to Karla McCullough, March 6, 2007 (exhibit 1, hereto).  American International South Insurance Co. charged Ms. McCullough an insurance premium tax and added such amount to her policy premium, in addition to a collection fee.  McCullough's vehicle was not garaged within any municipality, and at the time complained of herein, Kenton County had not imposed a tax on the unincorporated areas of the County.

## III.   LEGAL STANDARD

It is the plaintiff's burden "to establish his right" to class certification.  *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 560 (6th Cir. 2007) (citations omitted).  Under Federal Rule of Civil Procedure 23(a), there are four prerequisites to a class action: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).  "The class may only be certified if, 'after a rigorous analysis,' the district court is satisfied that these prerequisites have been met."  *Id.* (citations omitted).  In addition to the prerequisites of Rule 23(a), a plaintiff must also show that her suit falls within one of the three types of class actions under Federal Rule of Civil Procedure 23(b).  *Id.*

In determining the propriety of class certification, the Court may not adjudicate the actual merits of the case.  *Id.*; *see also Daffin v. Ford Motor Co.*, 458 F.3d 549, 553 (6th Cir. 2006) (same); *Bert v. AK Steel Corp.,* 2006 WL 1071872, * 4 (S.D. Ohio April 24, 2006) (same).  The

Court must accept as true the allegations of the complaint and the reasonable inferences that can be drawn from those allegations. *Eddleman v. Jefferson Cty., Ky.,* 1996 WL 495013, *3 (6th Cir. Aug. 29, 1996); *see also Bert, supra.* Any doubt regarding the propriety of certification should be resolved in favor of certifying the class. *Eddleman, supra*; *see also Randleman v. Fid. Nat'l Title Ins. Co.*, --- F.R.D. ----, 2008 WL 2323771, * 4 (N.D. Ohio June 4, 2008).

As the Court has recognized, it has ample authority to alter the class definition to bring it within acceptable limits. *See* Transcript of Status Conference, December 12, 2007, Docket No. 260, p. 22. (The Court: "I can modify [the class definition], but I generally don't do it *sua sponte*. I don't have a motion to modify it before me at this point."). A court is not bound by the class definition proposed in the complaint and should not dismiss the action simply because the complaint seeks to define the class too broadly. *See, e.g.*, 7B Wright, Miller, Kane,§ 1790, at 270-71 (1986); *accord Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir. 1993) (same); *Barney v. Holzer Clinic*, 110 F.3d 1207, 1213-14 (6th Cir. 1997) (court of appeals *sua sponte* narrowing class definition and limiting judgment accordingly); *Cervantes v. Sugar Creek Packing Co.*, 210 F.R.D. 611, 620 (S.D. Ohio 2002) (citations omitted) ("'it is within the prerogative of the court to construct a definition of the class' if a defect in the proposed definition can be readily cured"); H. Newberg & A. Conte, 1 Newberg on Class Actions, § 2:3 (4th ed. 2002) ("The court has full power under Rule 23 to resolve the ambiguity by redefining the class or affording the representative plaintiff an opportunity to do so.").

## IV.   ARGUMENT

This Court has already granted final certification in a settlement with Defendant Safe Auto in this litigation. *See Nichols et al. v. Safe Auto Insurance Company*, Case No. 06-cv-

00146, Doc. 162 (Feb. 1, 2008) ("Safe Auto Final Approval Order").[2]  The *Safe Auto* Class met

all of the requirements of class certification, with the exception of whether or not a class action

would be manageable at trial.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (a

court certifying a settlement class need not decide whether or not a class action would be

manageable at trial).   In granting final approval, the Court found that for the purposes of a

settlement the requirements of Rule 23 were satisfied:

> . . . All the prerequisites for class certification under Rule 23 are present.  The
> Class Members are ascertainable and too numerous to be joined.  Questions of
> law and fact common to all Class Members predominate over individual issues
> and should be determined in one proceeding with respect to all Class Members.
> The Class Representatives' claims are typical of those of the Class.  The class
> action mechanism is superior to alternative means for adjudicating and resolving
> this litigation.

Safe Auto Final Approval Order, ¶ 3.   Because Plaintiffs here seek class certification for

purposes of trial, the only difference between the instant case and *Safe Auto* settlement is that

Plaintiffs must establish that the proposed Class is manageable.   Consistent with the *Safe Auto*

final certification, the Court may for the same reasons certify the proposed Class and Subclasses

here, with the sole addition of finding of manageability as discussed below.

A.   **The Proposed Class and Subclasses Are Readily Ascertainable.**

Class certification requires "a class definition that will permit identification of individual

class members" so that the best notice practicable may be given to them.  Manual for Complex

Litigation (Fourth) §21.222 at 270 (2004).  "An identifiable class exists if all its members can be

ascertained by reference to objective criteria," and a class definition should avoid subjective

---

[2] At the time of this filing, the Court has also preliminarily approved settlements with Hartford Underwriters
Insurance Company, Shelter Mutual Insurance Company, and Acuity, a Mutual Insurance Company.  Motions for
Preliminary Approval have been filed regarding settlements reached between the respective Plaintiffs and Westfield
National Insurance Company, Capitol Indemnity Corporation, and Alfa Vision Insurance Company, all of which
were once Defendants in this consolidated action.   Settlement discussions continue with Foremost Insurance
Company and Stewart Title Insurance Company, and it is anticipated that Motions seeking preliminary approval for
those settlements will be filed prior to or near the end of briefing on the Plaintiffs' Motion for Class Certification.

criteria, e.g., a plaintiff's state of mind.  *Id.*  "Class members need not be ascertained prior to certification, but must be ascertainable at some point in the case."  *Dunnigan v. Metro. Life Ins. Co.*, 214 F.R.D. 125, 135 (S.D.N.Y. 2003) (*citing In re MTBE*, 209 F.R.D. 323, 337 (S.D.N.Y. 2002).[3]

　　　Plaintiffs anticipate that the Defendants will argue (as their law professor experts already have)[4] that the class definition set forth in Plaintiffs' complaint is not sufficiently ascertainable because it turns upon whether class members were "unlawfully charged" excess premium taxes. *See* FAC, ¶ 97.  To ensure that no issue can be raised with respect to ascertainability, Plaintiffs propose that the Class definition be modified, as set forth above, to include only those individuals who were charged local government taxes on their payment of premiums which were "either not owed, or were at rates higher than permitted."  *See supra* at 2-3.[5]  This modified definition readily meets the ascertainability standard because it relies upon objective facts to determine class membership.  The location of a property is not subjective, nor is the local tax rate for a particular jurisdiction.  Likewise, the amount of premium tax and fee actually charged to and collected from Plaintiffs and class members is an historical, objective fact, currently reflected in Defendants' electronically-stored policy data.

　　　Plaintiffs anticipate that Defendants will further argue that the proposed class definition contains an impermissible 'merits based' determination.  But as the Court has already found,

---

[3] *See also Midwestern Machinery v. Northwest Airlines, Inc.,* 211 F.R.D. 562, 565-66 (D. Minn. 2001)("[a] party and its experts should not be expected to have fully evaluated all data at the preliminary stage of class certification.").

[4] Plaintiffs respectfully submit that the Defendants' law professor expert reports, authored by Martin H. Redish and Robert H. Klonoff, be treated as no more than additional argument.  *See, e.g., Jenkins v. Hyundai Motor Financing Co.,* 2008 WL 781862, *3 (S.D. Ohio March 24, 2008) (court treated expert opinions on legal conclusions as "extensions of the parties' briefs and will consider the opinions as legal argument, rather than expert testimony."); *see also Burkhart v. Washington Metro. Area Transit Auth.,* 112 F.3d 1207, 1213 (D.C. Cir. 1997) ("[e]ach courtroom comes equipped with a 'legal expert,' called a judge.").

[5] This proposed class definition comports with the class definitions utilized in prior settlements in this litigation, including the *Safe Auto* settlement.

10

identification of a class based upon so-called "merits based" criteria, such as whether an individual "paid a premium for one location, when they were a resident of another location" is *not* a determination on the merits.  *See* Transcript of Status Conference, December 12, 2007, Doc. No. 260, pp. 33-34 (The Court:  "No, I haven't [determined the merits].  I wouldn't have decided the merits on that.  That's just the potential class.").  Accordingly, the class is objectively defined.

In addition to being objectively defined, a class definition must be sufficiently definite so that it is administratively feasible to determine whether a particular individual is a member of the class.  *See* 7 C. Wright & A. Miller, Federal Practice and Procedure, § 1760, at 121 (3rd ed. 1986) (hereinafter "Wright & Miller"); *accord* 3B Moore's Federal Practice, 23.04[1] at 23-119 ("membership of the class must be capable of ascertainment under some objective standard"). Administrative feasibility "does not equate to convenient." *Chartone, Inc. v. Raglon*, -- S.W. 3d --, 2008 WL 1821866 (Ark. April 28, 2008) (*quoting Lenders Title Co. v. Chandler*, 358 Ark. 66, 75-76 (Ark. 2004)).  For instance, in *Dunnigan v. Metropolitan Life Ins. Co.*, 214 F.R.D. 125, 136 (S.D.N.Y. 2003), the court assumed that the defendant could generate computer files identifying a class of beneficiaries of a long-term disability insurance policy issued by the defendant, but held that even if the defendant "is unable to run the database on the older statistical information, the class can be identified through an examination of the individual files of each of the participants.  The fact that this manual process may be slow and burdensome cannot defeat the ascertainability requirement." *Id.*

Here, it is administratively feasible to determine membership in the Class and proposed Subclasses because each named Defendant *has already produced* policy record data in electronic form for all policies written during the proposed class period.  This electronic data can be used in

11

conjunction with geocoding software applications to ascertain membership in the class.[6]
Plaintiffs retained Paul Manning of Info Tech, Inc. to provide an opinion on the feasibility of
using Defendant's data with geocoding software (such as Group 1 software).  *See* Declaration of
Paul Manning, April 15, 2008, ¶ 3 (exhibit 2, hereto).  Geocoding is a software tool that can be
used to determine whether an address – such as the location of an insured risk – has been
correctly assigned to a tax jurisdiction based upon specific latitude and longitude coordinates.
*See id.*, ¶¶ 2, 5.  Mr. Manning was provided with the electronic databases which contain records
of the policies Defendants had written in the Commonwealth during the proposed class period.
*See id.*, ¶ 3.  Mr. Manning analyzed this electronic data and opined that each of the Defendants'
databases "contains the information necessary to geocode their customers' addresses. . ."  *See id.*,
¶¶ 3, 6.  Accordingly, it is administratively feasible to identify the class.

### B.   The Proposed Subclasses Otherwise Satisfy the Requirements of Rule 23(a).

Rule 23(a) of the Federal Rules of Civil Procedure provides that:

> One or more members of a class may sue or be sued as
> representative parties on behalf of all only if (1) the class is so
> numerous that joinder of all members is impracticable, (2) there
> are questions of law or fact common to the class, (3) the claims or
> defenses of the representative parties are typical of the claims or
> defenses of the class, and (4) the representative parties will fairly
> and adequately protect the interests of the class.

---

[6] Indeed, two defendants in this litigation have expressly stated that geocoding could be used to identify class
members.  *Safe Auto* purchased geocoding software and began using it in the 4th Quarter of 2006.  *See* Affidavit of
Michael Overmyer, ¶¶6-13, Case No. 06-146, Docket No. 155 (Jan. 15, 2008).  As a result of its use of this software,
Safe Auto was able to determine whether a particular individual was a member of the class.  *Id.*, ¶ 11.  Similarly,
Acuity admitted that geocoding software allowed it to accurately tax the citizens of the Commonweath:

> MR. MacDONALD: Only, Your Honor, that I think that the settlement and really the whole
> process has a lot of social utility.  This lawsuit, while not exactly welcomed by Acuity, has
> certainly led to Acuity's systems *being dramatically improved*, and I think Acuity is now in a
> *much better position to accurately tax the citizens* of the Commonwealth.  Working together with
> the plaintiff lawyers and the with the Court, I think we've accomplished something good in this
> case.

Transcript of Status Conference, May 29, 2008, *Nichols et al. v. Acuity a Mutual Insurance Company*, Case No. 06-
146. (emphasis added).

Fed. R. Civ. P. 23.   These four initial prerequisites, frequently referred to as numerosity, commonality, typicality and adequacy of representation, are met here.

### 1.   Each Subclass Is So Numerous that Joinder of All Its Members Is Impracticable.

To satisfy the numerosity requirement, a plaintiff need not specify an exact number of class members, but must show only that joinder is impracticable.   *Noonan v. Ind. Gaming Co., L.P.*, 217 F.R.D. 392, 395 (E.D. Ky. 2003); *Ingram v. Joe Conrad Chevrolet, Inc.*, 90 F.R.D. 129, 130 (E.D. Ky.1981).   Further, the court is given discretion to make assumptions when determining the numerosity of the class.   *Reeb v. Ohio Dep't of Rehab. & Corr.*, 81 Fed. Appx. 550, 555 (6th Cir. 2003).   Plaintiffs need not state a number with specificity, nor is there a need for a definite standard as to the size of the class.   *Gevedon v. Purdue Pharma.*, 212 F.R.D. 333, 337 (E.D. Ky. 2002).   A reasonable, good faith estimate is ordinarily sufficient.   *Id.*; *see also* 7A *Charles Wright, Arthur R. Miller & Mary Kay Kane*, Federal Practice and Procedure: Civil 2d, § 1762 at 153 (2d ed.1986).   There is no legally established numerical test to determine whether the numerosity requirement has been met, but it has been held that a class of as few as 35 members raises the presumption that joinder is impracticable.   *See*, *e.g*., *In re American Medical Sys.*, 75 F.3d 1069, 1076 (6th Cir. 1996).

Here, many of Defendants, in their written discovery answers or in other representations to the Court, referenced having written hundreds to thousands of policies during the proposed class period.   In addition, Plaintiffs' expert Paul Manning has reviewed the data produced by the defendants and has provided an estimate of the number of unique policies written by each Defendant in the Commonwealth during the relevant time period.   *See* Declaration of Paul Manning, July 7, 2008 (exhibit 3, hereto).   Prior settlements with other defendants in this action, in addition to the Kentucky Office of Insurance Market Conduct Analyses, suggest at the very

least a potential 1% error rate for each Defendant in determining the taxing jurisdiction of the risk location for the policies they have written.[7]

Plaintiffs can thus surmise that that even if only 1% of the polices that the Defendants have written contain incorrect tax assignments for the risk location, each Subclass will have between approximately 270 and 9,000 putative class members. Given the number of potential Class members, joinder of that many class claimants is unwieldy and impracticable.  Indeed, were the Court to rule that joinder was possible and were to deny certification, the courts in the Commonwealth would be faced with the prospect of thousands of separate trials.  Such a scenario is neither desirable nor warranted and joinder is therefore not practicable.

For the foregoing reasons, the numerosity requirement is satisfied.

### 2.    There Are "Questions of Law or Fact Common" to the Subclasses.

"The commonality test is qualitative rather than quantitative" in that "there need be only a single issue common to all members of the class." *Reeb,* 81. Fed. Appx. at 557 (*quoting In re American Medical Systems*, 75 F.3d 1069, 1080 (6th Cir. 1996)); *see also Bittinger v. Tecumseh Products Co.,* 123 F.3d 877, 884 (6th Cir. 1997) ("Rule 23(a) simply requires *a* common question of law or fact.")(emphasis in original); *Bert v. AK Steel, supra,* 2006 WL 1071872 at *5 (the commonality requirement of Rule 23(a)(2) is met if "the resolution of at least one common issue will affect the class as a whole") (citations omitted).  To satisfy Rule 23(a)(2), the case must present a common issue the resolution of which will advance the litigation.  *Sprague v. GMC,* 133 F.3d 388, 397 (6th Cir. 1998).

This requirement is satisfied "as long as the members of the class have allegedly been affected by a *general* policy of the defendant, and the general policy is the focus of the

---

[7] *See* Kentucky Office of Insurance, Market Conduct Analyses (setting forth error rates between 2 – 24% for selected insurers operating in the Commonwealth) (exhibits 4 and 5, hereto).

litigation." *Day v. NLO, Inc.,* 144 F.R.D. 330, 333 (S.D. Ohio 1992) (emphasis in original); *see also Fallick v. Nationwide Mut. Ins. Co.,* 162 F.3d 410, 424 (6th Cir. 1998) (commonality test is met "when there is at least one issue whose resolution will affect all or a significant number of the putative class members").  Indeed, commonality is met "[w]hen the party opposing the class has engaged in some course of conduct that affects a group of persons and gives rise to a cause of action," such that all members share at least one of the elements of that cause of action. 1 Herbert Newberg and Alba Conte, *Newberg on Class Actions* § 3.10, at 3-51 (3rd ed. 1992).

Here, there are common issues central to this litigation, specifically, whether the Defendants charged their customers local government insurance premium taxes and collection fees in excess of the amount owed.  On a finer point, a common question of fact exists with respect to whether the harm alleged by the plaintiffs was the product of a uniform, institutional policy or practice.  In that regard, this case is analogous to *Randleman*, *supra,* where the plaintiffs sued the defendant title insurance company alleging they had been injured and wronged by the company's failure to charge them a lower premium, as provided by state law.  As in *Randleman*, the plaintiffs here have alleged the existence of "routine and standardized practices" because the proposed Class Members' claims all concern whether Defendants' general insurance premium billing practices with respect the municipal tax assignments for members of the proposed Subclasses were incorrect.  *Id*. at * 6.  The Court in *Randleman* found that routine and standardized practices weighed in favor of commonality and typicality, and certified the class. *Id.*  Because there are routine and standardized practices at issue here, as in *Randleman*, the commonality requirement is satisfied.

3.    **The Claims of the Named Plaintiffs Are Typical of the Claims of the Class**.

Typicality is satisfied when the named Plaintiff's injuries "arise[ ] from the same event or practice or course of conduct that give rise to the claims of other class members and his or her claims are based on the same legal theory." *Craft v. Vanderbilt Univ.*, 174 F.R.D. 396, 404 (M.D. Tenn. 1996); *accord Senter v. GMC*, 532 F.2d 525 n. 31 (6th Cir. Ohio 1976).   Slight factual differences that may exist between the class representative and the other Class Members will not defeat typicality.   *See Tucker v. Union Underwear Co.*, 144 F.R.D. 325, 329 (W.D. Ky. 1992) ("absolute homogeneity" not required).   As is the case with the test for commonality, the test for typicality "is not demanding." *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 884 (6th Cir. 1997) (*quoting Forbosh v. J.C. Penney Co.*, 994 F.2d 1101, 1106 (5th Cir. 1993)).

The typicality requirement is satisfied in this case because the Plaintiffs have alleged claims that arise from the same course of conduct and common practice that harmed each Class Member, and that are based on the same legal theories.   *See In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 518 (D.N.J. 1997) (typicality requirement met in case alleging replacement vanishing premium in investment plan claims, because defendant's alleged scheme to defraud was "prominent guiding thread through all of the plaintiffs' claims"); *Duhaime v. John Hancock Mut. Life Ins. Co.*, 177 F.R.D. 54, 63 (D. Mass. 1997) (typicality requirement where "named plaintiffs were subjected to the same deceptive sales techniques allegedly used by [defendant] against other class members").   Specifically, Plaintiffs and each Class Member contend that the errors giving rise to the overcharges resulted from a common scheme or practice, and that the manner in which such errors manifested in harm to the Plaintiffs are substantively the same for each Class Member.   The Plaintiffs' claims here "all arise from the

16

same course of conduct" and "are based on the same legal theories." *See, e.g., Randleman*, 2008 WL 2323771, at * 7.  The typicality requirement is therefore satisfied here.

<strong>4.      The Representative Parties Will Fairly And Adequately Represent The Interests Of The Class.</strong>

Rule 23(a)'s adequacy of representation requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem,* 521 U.S. at 625 (citations omitted).  This requirement is met when (i) the named representatives have common interests with unnamed members of the Class; and (ii) the representatives have retained qualified counsel.  *Senter*, 532 F.2d at 525.

There are no conflicts of interest between the named Plaintiffs and the other Class and Subclass members that impair Plaintiffs' incentive to prosecute vigorously all aspects of their claims against the Defendants.  The representative Plaintiffs have the same incentive as each of the other Class and Subclass members who believe they were charged premiums that included taxes and fees that were not owed, i.e., to establish the overpayment and to maximize the overall recovery.  *See In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 208 (5th Cir. 1981) ("so long as all class members are united in asserting a common right, such as achieving the maximum recovery for the class, the class interests are not antagonistic for representation purposes") (internal citation omitted).

Here, the representative Plaintiffs have zealously pursued their claims since learning of the Defendants' wrongful conduct.  Given the identical aspects of claims among the Plaintiffs and the Class and Subclass members set forth at length above, there is no potential for conflicting interests in this action.  The Plaintiffs possess the same interests and have suffered the same type of injury as other Class Members.  The simple fact is that Plaintiffs and Class Members are seeking to vindicate identical interests.

Further, Plaintiffs have engaged competent counsel.  The firms representing the Proposed Class in this case are clearly qualified to conduct this action.[8] Gary E. Mason of The Mason Law Firm, L.L.P. has successfully prosecuted dozens of consumer class actions in state and federal courts throughout the country since 1990.  Alexander Edmondson and Jason Reed of the law firm Edmondson & Associates and Christopher Nordloh of Nordloh Law Office, PLLC are experienced litigators and each is well-respected in the Covington legal community.  John C. Whitfield is an experienced litigator and trial lawyer with a well-deserved reputation for zealously representing plaintiffs both individually and as part of class actions in Western Kentucky.  These attorneys have vigorously conducted this litigation from the outset, and, as noted above, have secured favorable settlements in several related cases before this Court.

In sum, the named Plaintiffs and their counsel will fairly and adequately protect the interests of the Class.  The adequacy requirement has therefore been satisfied.

**C.     The Action Meets All Requirements Of Rule 23(b)(3) As Common Questions Predominate, Certification Presents A Superior Method For Adjudication and the Action is Manageable.**

In addition to satisfying the four prerequisites of Rule 23(a), Plaintiffs must establish that the requirements of one of the three subdivisions of Rule 23(b) are met. Here, Plaintiffs seek certification pursuant to Rule 23(b)(3).  Rule 23(b)(3) requires that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  This provision encompasses those cases in which a class action would achieve economies of time, effort, and expense and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.  *See* Fed. R. Civ. P. 23, Advisory Committee Note to

---

[8] Copies of Plaintiffs' counsel's firm resumes are attached hereto as exhibits 6 - 8.

1966 Amendments, *reprinted in* 39 F.R.D. 69, 102-3 (1966).  Both criteria are met in this case: common questions predominate and a class action is the superior method to adjudicate the claims of the Class.

### 1.   <u>Common Questions Predominate Here</u>.

The predominance requirement in Rule 23(b)(3) focuses "on the legal or factual questions that qualify each class member's case as a genuine controversy, questions that preexist any settlement." *Amchem*, 521 U.S. at 623.  This requirement "requires a predominance of common questions, not a unanimity of them."  *Hanrahan v. Britt*, 174 F.R.D. 356, 635 (E.D. Pa. 1997). The predominance requirement is satisfied when the litigation will concern "significant legal and factual questions which are common to the class."  *Id*.; *see also In re School Asbestos Litig*., 789 F.2d 996, 1010 (3rd Cir. 1986) (even a few common questions may satisfy the predominance requirement if resolution of those issues "will so advance the litigation that they may fairly be said to predominate.").  A claim will meet the predominance requirement where there exists generalized evidence that proves or disproves an element on a simultaneous, class-wide basis, because such proof obviates the need to re-examine each class member's individual position.  *In re Potash Antitrust Litig.,* 159 F.R.D. 682, 693 (D. Minn. 1995).

As detailed above, the Plaintiffs allege that Defendants failed to charge its policy holders the proper tax on premiums as a result of one or more uniform institutional practices.  These allegations of a common practice are sufficient to demonstrate that common questions predominate.  *See Amchem,* 521 U.S. at 625 ("predominance is a test readily met in certain cases alleging consumer . . . fraud"); *see also In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 314 (3d Cir. 1998) (finding predominance where plaintiffs alleged  that defendant engaged in a common course of conduct by which it defrauded class members); *Randleman*,

2008 WL 2323771, * 12 (finding predominance where the plaintiffs' "cause of action arises out of an alleged course of conduct that is common with respect to all potential plaintiffs"); *Fry v. UAL Corp.*, 136 F.R.D. 626, 637 (N.D. Ill. 1991) (in deciding whether the "predominance" requirement is met, courts generally focus on the issues relating to defendant's liability) (citation omitted).  Common issues of law and fact thus predominate.

## 2.   The Class Action Mechanism is the Superior Method of Adjudication.

This case also meets the second requirement of Rule 23(b)(3): that the class action be superior to other available methods for the fair and efficient adjudication of the controversy. *Impervious Paint Industries Ltd. v. Ashland Oil, Inc.,* 1980 U.S. Dist. WL 1789 (W.D. Ky. Jan. 4, 1980).   Four factors control the court's determination of superiority: (i) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (ii) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (iii) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (iv) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3).

### i.   Interests of Individual Members

The interest of Class Members in conducting separate lawsuits does not require denial of class certification when a large number of Class Members' claims would be so small that Class Members would be deterred from bringing actions on their own.  *In re Prudential Ins. Co. of Am. Sales Practices Litig*., 962 F.Supp. at 523.  Indeed, as the Supreme Court reasoned in *Amchem*:

> [T]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for individuals to bring a sole action prosecuting his or her rights.  A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

*Amchem*, 521 U.S. at 617; *accord Randleman*, 2008 WL 2323771, * 12 (*citing Carroll v. United Compucred Collections, Inc.*, 399 F.3d 620, 625-26 (6th Cir. 2005) ("As damages are likely to range from under $ 100 to over $ 500 per class member, the potential recovery for the proposed plaintiffs does not give sufficient incentive for members of the proposed class to bring their own claims.").[9]  As such, the first factor favors class certification.

### ii.  Pending Proceedings.

The second factor, the nature and extent of any existing litigation, also weighs in favor of class action superiority.  The focus of the inquiry is on whether there is so much litigation in progress that certifying a class would be unproductive.  *Central Wesleyan College v. W.R. Grace & Co.*, 143 F.R.D. 628, 640 (D.S.C. 1992), *aff'd*, 6 F.3d 177 (4th Cir. 1993).  Plaintiffs are unaware of any individual lawsuits against Defendants, including the issues at bar.

### iii.  Concentration of Litigation in One Forum.

The third factor looks to whether certification in this court would: (1) lead to duplicative results; or (2) place the controversy in an inconvenient forum.  *See* 7A *Wright, Miller & Kane*, § 1780, at 572-73.  Class certification will avoid duplicative results by unifying numerous common issues of law and fact.  Further, the forum is convenient as Defendants' conduct took place within the Commonwealth and the Class is composed solely of Kentucky residents.  Therefore, the third factor favors class certification.

### iv.  Manageability.

The final factor encompasses the "whole range of practical problems that may render the class action format inappropriate for a particular suit." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156,164, (1974).  Generally, "failure to certify an action under Rule 23(b)(3) on the sole ground that it would be unmanageable is disfavored and 'should be the exception rather than the rule.'"

---

[9] *See, e.g., Safe Auto* Settlement Notice and Claim Form, Case No. 06-cv-00146, Docket No. 124-3, p. 58 ("discovery and investigation has revealed that the average amount policyholders paid in excess of applicable tax is about $39.00").

*In re Visa Check/Mastermoney Antitrust Litig. v. Visa, United States*, 280 F.3d 124, 140-141 (2d Cir. N.Y. 2001) (citations omitted); *see also In re Workers' Compensation*, 130 F.R.D. 99, 110 (D. Minn. 1990) (stating that "dismissal for management reasons is never favored"); *In re Bristol Bay, Alaska, Salmon Fishery Antitrust Litig.*, 78 F.R.D. 622, 628 (W.D. Wa. 1978) (stating that "dismissal for management reasons, in view of the public interest involved in class actions, should be the exception rather than the rule") (internal quotation marks omitted); *Yaffe v. Powers*, 454 F.2d 1362, 1365 (1st Cir. 1972) (stating that "for a court to refuse to certify a class . . . because of vaguely-perceived management problems . . . discounts too much the power of the court to deal with a class suit flexibly, in response to difficulties as they arise").

First, the fact that the proposed Class and Subclasses may contain thousands of members does not mean the Class and Subclasses are unmanageable. *See Randleman,* 2008 WL 2323771 at 8-10; *see also Mitchell-Tracey v. United Gen. Title Ins. Co.*, 237 F.R.D. 551, 560 (D. Md. 2006) ("although the proposed classes may include thousands of class members, the potential for unmanageability should not be an automatic precursor for denying certification.")

Second, that it may be laborious to determine class membership does not mean that the litigation is unmanageable. *See Randleman,* 2008 WL 2323771 at 8-10. In *Randleman*, the court found that where (as here) the data is readily available, the laborious search for individual insurance policyholder files to determine class membership does not preclude class certification. Indeed, to hold "otherwise would deprive persons who could, as the [plaintiffs] have, assert viable claims of their ability to recover funds that, according to the [plaintiffs], should never have come into [defendant's] hands, and should be returned to them." *Id* at * 9. The *Randleman* court further stated that:

What remains, even if [defendant] presents a further challenge to the viability of the causes of action by way of a summary judgment motion, is, if plaintiffs

> overcome such challenge, creation and implementation of a mechanism for identifying and notifying class members, determining the amount of their loss, and entering judgment in their favor. These will no doubt be time consuming and expensive undertakings, but they are far from unknown to the federal courts. Certainly, standing alone, these tasks, which, from my judicial standpoint, are essentially managerial and manageable, are no basis for letting [defendant] -- if its wrongdoing is established definitively -- keep monies that it never should have gotten.

*Id.* Other courts have also held manageability does not preclude class certification where the requisite data "readily available" to it and "reasonable methods are available to collect the data." *Mitchell-Tracey*, 237 F.R.D. at 560 ("It strains credulity to suggest, as [the title insurers] do, that the Defendants (and their agents) lack the ability to compile information on insurance policies that they have issued"); *see also Piscioneri v. Commonwealth Land Title Ins. Co. (In re Coordinated Title Ins. Cases)*, 2004 WL 690380, * 17-18 (N.Y. Sup. Ct. Jan. 8, 2004) (rejecting the argument by title insurers that a class action would not be manageable because identifying members of the class would be a "gargantuan task"); *Cohen v. Chi. Title Ins. Co.*, 242 F.R.D. 295, 302 (E.D. Pa. 2007) (rejecting defendant's argument that "class action would be unmanageable because it has no computerized database collecting the policies written" because "[a]bsent some affirmative evidence searches are impossible, this Court may reasonably infer and find a search for affected class members is not impossible.").

Further, because each named Defendant has *already produced* electronic databases for policies written in the Commonwealth during the proposed class period, manual identification of class members will not be initially required. *See supra* at 11-12. Plaintiffs' expert has opined that these databases contain sufficient information to geocode the proposed Class and Subclass members' addresses. *Id.* As demonstrated by this litigation, geocoding is a tool that can be used to determine whether an address has been correctly assigned to a tax jurisdiction. While geocoding might not be 100% accurate, even Defendants' expert admits that the error rate is

likely less than 30%. *See* Deposition of Craig Knoblock, June 6, 2008, ("Knoblock Depo.") (Exhibit 9, hereto), pp. 34-35; 83-84 (testifying that Group 1 software would probably have a roughly 30% error rate).

With respect to identifying the proposed Class, the error rate is likely to be much smaller for the following reasons. A geocoding error could mean one of three things: 1) the insured is incorrectly assigned to a tax district with the same tax rate; 2) the insured is incorrectly assigned to a tax district with a higher tax rate; or 3) the insured is incorrectly assigned to a tax district with a lower tax rate. *See* Knoblock Depo., pp. 39-45. In the first instance, the geocoding error is harmless because the overall result is correct in that the insured is a class member. *Id*., p. 39. In the second instance, the geocoding error would exclude the insured from class membership. And in the third instance, the geocoding error would incorrectly include the insured as a class member. *Id*., pp. 41-43. Thus, there is only a one in three chance that a geocoding error will mean that the class is overinclusive. *Id*., p .45. Further, if the data is manually cleaned, it could improve the accuracy of the geocoding results even more so. *Id*., pp. 85-86. Accordingly, consistent with *Randleman, Mitchell-Tracey, Piscioneri*, and *Cohen,* identification of Class members is manageable, even if resort to manual examination of certain policy records is necessary.

Third, the possibility that Plaintiffs' initial identification of the class through geocoding may be overinclusive does not defeat class certification. As discussed earlier with respect to ascertainability, class members *need not be ascertained* prior to certification. *Dunnigan, supra*. Indeed, a "putative class may initially include members who could not have brought the underlying action in their own name." *See, e.g., State ex rel. Coca-Cola Co. v. Nixon*, 249 S.W.3d 855, 861 (Mo. 2008) ("In that circumstance, the class definition may be modified . . . in

order to remove the uninjured putative members . . . If, after such modification, a relatively small number of uninjured putative members remain, the [trial] court can easily resolve individual questions after the common questions have been answered.") (citations omitted)[10]; *accord Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. Fla. 1984) (vacating denial of class certification and finding that an overbroad class that included uninjured parties, "simply requires that the class be limited"); *Carlough v. Amchem Prods.*, 158 F.R.D. 314, 325 (E.D. Pa. 1993) ("Rule 23 does not require the parties to exhaust every conceivable method of identifying the individual class members."). Defendants will not be prejudiced by Plaintiffs' initial identification of the class through geocoding, even if the resulting class is overinclusive, because the Defendants will retain the right to challenge class membership for the individuals initially identified.

Finally, to further aid the manageability of this litigation, the Plaintiffs, as detailed above, have proposed Subclasses for each named Defendant. Subclasses are an important management tool available to a district court to address any individualized issues that might arise between individual defendants in a class action. *See, e.g., In re Visa Check/Mastermoney Antitrust Litig. v. Visa, United States*, 280 F.3d 124, 140 (2d Cir. N.Y. 2001); *see also* Fed. R. Civ. P. 23(c)(4) (stating that "when appropriate, (A) an action may be brought or maintained as a class action with respect to particular issues, or (B) a class may be divided into subclasses and each subclass treated as a class"). The Plaintiffs are also aware that the Court has expressed concerns over the manageability of the number of causes of action in this litigation. *See* Transcript of Status Conference, December 12, 2007, Docket No. 260, p. 25. While Plaintiffs believe that all of the causes alleged arise from Defendants' routine and standardized practices and rely upon common

---

[10] Unlike the less than 30% potential error rate here, in *Coca-Cola Co.*, "**eighty percent of the putative class suffered no injury**." 249 S.W.3d at 862 (emphasis in original).

facts, and may well be reduced through motions practice, the Court may also employ subclasses to manage any individual issues that may arise with respect to the causes of action.[11] Accordingly, any individual issues that may arise between individual named Defendants or individual causes of action will be appropriately managed through the creation of the proposed Subclasses.

In sum, the proposed Class and Subclasses here are manageable.

## V.    CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully request that their motion for certification of the Class and Subclasses as defined be granted and that the Court Order such other and further relief as appears just and proper to the Court.


DATED: July 10, 2008                    Respectfully submitted,


                                        /s/  Jason V. Reed
                                        Alexander F. Edmondson, Esquire
                                        Jason V. Reed, Esquire (87513)
                                        EDMONDSON & ASSOCIATES
                                        28 West Fifth Street
                                        Covington, KY 41011
                                        P: (859) 491-5551 F: (859) 491-0187

                                        Gary E. Mason, Esquire (*Pro Hac Vice*)
                                        THE MASON LAW FIRM, L.L.P.
                                        1225 19th Street NW, Suite 500
                                        Washington, D.C. 20036
                                        P: (202) 429-2290 F: (202) 429-2294

---

[11] Notwithstanding the foregoing, Plaintiffs are prepared to dismiss at the appropriate time Count II for Fraud, Count V for Breach of Fiduciary Duty, Count VI for Civil Conspiracy, and Count VIII for Vicarious Liability, thereby maintaining Count I for Illegal Dealing in Premiums, Count II for conversion, Count IV for Negligent Servicing, as well as Count VII for Declaration of Rights, if such a narrowing of the claims is material to the Court's determination of manageability.  These three remaining claims and a count for Declaration of Rights, which would be determined by the Court, would clearly be manageable.

Christopher S. Nordloh, Esquire (85716)
NORDLOH LAW OFFICE, PLLC
28 West Fifth Street
Covington, KY 41011
P: (859) 491-9991 F: (859) 491-0187

John C. Whitfield, Esquire
WHITFIELD & COX, PSC
29 East Center Street
Madisonville, KY 42431
P: (270) 821-0656 F: (270) 825-1163

Counsel for Plaintiffs

<u>CERTIFICATE OF SERVICE</u>

This will certify that the foregoing was filed with the Clerk of the U.S. District Court, Eastern District of Kentucky, on July 10, 2008, thereby generating electronic service and notice of service to all counsel of record.

/s/  Jason V. Reed
Counsel for Plaintiffs