UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL ACTION NO. 06-CV-141 (DLB)

| | |
|---|---|
| L. Craig Kendrick, *et al.*, ) | |
| ) | **JUDGE DAVID L. BUNNING** |
| Plaintiffs, ) | |
| ) | **MAGISTRATE JUDGE WEHRMAN** |
| vs. ) | |
| ) | |
| Standard Fire Insurance Company, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**REPLY IN SUPPORT OF *MOTION IN LIMINE* OF DEFENDANTS OHIO CASUALTY INSURANCE COMPANY, WEST AMERICAN INSURANCE COMPANY, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY AND STATE FARM FIRE AND CASUALTY COMPANY TO EXCLUDE PLAINTIFFS' PROPOSED EXPERT WITNESS**

**I.     INTRODUCTION**

In an effort to hide the glaring deficiencies with the qualifications and opinions of their expert, Plaintiffs have constantly wavered regarding the scope of Mr. Manning's testimony. If Plaintiffs' expert, Paul J. Manning, is only offered to testify that Defendants have the necessary data to input into a geocoding software, as Plaintiffs seem to indicate in their Response, Mr. Manning's opinion does not assist this Court in determining membership in the proposed class, or any other fact relevant to class certification. Unless Plaintiffs can establish that geocoding software is accurate, Mr. Manning cannot help this Court in establishing who was either overcharged for the local government premium tax, or who was charged when they should not have been.

However, Plaintiffs also have asserted their desire to use Mr. Manning to demonstrate

1

that geocoding software, in particular Group 1's software, can *accurately* determine the correct town code assignment, and thus aid this Court in determining membership in the class. Plaintiffs have utterly failed to demonstrate either that Mr. Manning is qualified to testify on geocoding software, or that his conclusion that such software is accurate is based upon reliable scientific, technical, or other specialized knowledge.

No matter how Plaintiffs offer Mr. Manning, or how they couch his testimony, he is not qualified to testify as an expert regarding geocoding software and his opinions are wholly unreliable.

## II. LAW AND ANALYSIS

Proposed expert testimony must be based upon reliable scientific, technical, or other specialized knowledge and must assist the trier of fact in determining some fact at issue. *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 592 (1993). At the class certification stage, the expert opinion must aid the court in determining some fact relevant to class certification. Plaintiffs' revised class definition is as follows:

> All persons in the Commonwealth of Kentucky who purchased insurance from or underwritten by State Farm Fire And Casualty Insurance Co., State Farm Auto Insurance Co., Nationwide Mutual Insurance Co., Ohio Casualty Insurance Co., West American Insurance Co., Standard Fire Insurance Co., Travelers Insurance Co., and American International South Insurance Co. during the Relevant Time Period (June 16, 2001, through the present) and who were charged local government taxes on their payment of premiums which were either not owed, or were at rates higher than permitted.

Pls. Mtn. for Class Certification, at 2, *Kendrick* ECF No. 333. Plaintiffs suggest to this Court that "Mr. Manning's opinion is primarily aimed at assisting the court on the issue of ascertainability, since whether the class can be objectively determined using electronic means goes directly to the issue of ascertainability." Pls. Response, at 13, *Nichols* ECF No. 211; *Kendrick* ECF No. 331. Therefore, Plaintiffs must demonstrate how Mr. Manning will aid the

Court in determining who falls within their class definition – i.e. – who were either overcharged local government premiums taxes, or who were charged local government premium taxes that were not owed.

> **A. If Mr. Manning's Testimony Is Only That Defendants' Have the Necessary Data To Input Into Geocoding Software, His Testimony Will Not Aid This Court In Determining Any Fact Relevant To Class Certification.**

Plaintiffs state: "[t]he conclusion that Defendants' data is susceptible to the geocoding process is the central finding of Mr. Manning's opinion." Pls. Response, at 11. Essentially, Plaintiffs offer Mr. Manning as an expert to testify that Defendants have the necessary data to be analyzed by a geocoding program. Plaintiffs now try to downplay the scope of Mr. Manning's opinion in opposing Defendants' Motion *In Limine*, despite the fact that they rely on his opinion to support the assertion that Group 1 can accurately determine tax code assignments in their Motion for Class Certification. Pls. Mtn. for Class Certification, at 12.

Plaintiffs have not, and cannot, demonstrate how the opinion that "Defendants data is susceptible to the geocoding process" aids the Court in determining membership in the proposed class. In order to determine membership in the class, Plaintiffs must not only prove that Defendants have the required data, but must also establish that an insured was either "charged local government taxes on their payment of premiums which were either not owed, or were at rates higher than permitted." To establish this, Plaintiffs must show for each instance in which the geocoding program's assigned tax code differs from Defendant's assignment, that the geocoding program's assignment is correct, and Defendant's is wrong. For unless the geocoding program's assignment is correct and Defendant's is wrong, membership in the class is not established. Mr. Manning has no basis to opine that Group 1's code assignment will be correct when it differs from the assignment made by a Defendant because he conducted

3

absolutely no tests or analysis of Defendants' data to support such an opinion. Manning Dep., at 57-59, 61-63.

In an outrageous and entirely misleading representation to this Court, Plaintiffs blame both Defendants and the Magistrate Judge for their failure to perform any analysis with the data produced by Defendants. Specifically, Plaintiffs make the unsupported assertion that "Defendants' delinquent production, combined with the tight time constraints imposed by the Magistrate's Order, rendered full analysis **impossible**." Pls. Response, at 6 (emphasis added). Plaintiffs only now place blame on Defendants and the Magistrate Judge. Plaintiffs never appealed the Magistrate's Scheduling Order, didn't appeal the Revised Scheduling Order, never asked for reconsideration, and waited until their Response to this Motion to complain about the timeframe. However, Plaintiffs still had more than a month to analyze Defendants' data. As discussed below, Plaintiffs had nearly all the data from Defendants by the deadline of March 17, 2008, and their expert disclosures were not set until April 15, 2008. Therefore, Plaintiffs had over a month to run the data, or at least conduct a sampling. They did nothing.

Instead, Plaintiffs attempt to blame the Magistrate, Defendants, and baldly mislead the Court with half-truths when they state, for example, that "State Farm's production of its complete data set was delayed until the first week of April." Pls. Response, at 6. The Court's order compelled production of State Farm's location data within 20 days, which was March 17, 2008. Order on Mtn. to Compel, at 20, *Kendrick* ECF No. 284. State Farm timely produced responsive location data to Plaintiffs on that date, compiled on five compact discs. (*See* letter of March 17, 2008 from attorney McNellie to attorney Reed, attached as Exhibit A). Nearly two weeks later, Plaintiffs sent an email to attorney McNellie on March 28, claiming that the disc with 2004/2005 data was blank. (See March 28 emails to and from counsel, attached as Exhibit

4

B). That very same day, March 28, State Farm's counsel copied the purportedly missing data to another disc, then sent that replacement disc to Plaintiffs' counsel via delivery the next business day. (*See* Ex. B; Federal Express Invoice, attached as Exhibit C). Plaintiffs' counsel obviously failed to examine the produced data for *11 days* before telling opposing counsel that one disc was blank (which would be unusual, since none of the other copies were blank), while only *one business day* elapsed for State Farm's counsel to send a replacement disc to Plaintiffs. Thus, Plaintiffs' suggestion that State Farm's "delinquent production" delayed their review of State Farm's location data until the first week of April is absolutely false.

It is true that one Defendant, Indiana Insurance, had problems with data files being corrupted in copying, which delayed their responses to interrogatory No 4. However, Indiana Insurance responded to Interrogatory No. 4 in compliance with the Order entered by Magistrate Judge Wehrman following a telephonic status conference on March 27, 2008. *See* March 27, 2008 Order, *Nichols* ECF No. 175, *Kendrick* ECF No. 292; (*See* Email communication dated March 31, 2008 from Attorney Nordloh to Attorney Taylor, attached as Exhibit D).

Pursuant to a *negotiated agreement* with Plaintiffs, Kentucky Farm Bureau produced its data on March 14 and March 31. The first production on March 14, three days **before** the required deadline, was by far the bulk of the production, with the March 31 production consisting of a 2,000 policy sampling for the prior years where it would have been difficult and time consuming to retrieve all of the information that Plaintiffs were requesting. *See* Agreed Order, *Nichols* ECF No. 172; (*See* Letters of March 14 and 31, 2008 from Attorney Hamilton to Attorney Reed, attached as collective Exhibit E).

Other Defendants submitted their data on time, and some of the data was submitted early. Even with extremely minimal delay by only a few of the Defendants, by March 17, 2008,

5

Plaintiffs still had sufficient data available to, at a minimum, put a random sample of various insurers' data through the Group 1 software and determine the quality of the results. However, Plaintiffs never had their expert analyze **any** of the data provided by any of the Defendants. Manning Dep., at 61. Plaintiffs offer no evidence or argument as to why they did not even try to analyze the data in the allotted time. Instead, Plaintiffs blame the Magistrate Judge's Scheduling Order and Defendants' so-called "delinquent production."

The fact that Plaintiffs didn't even complain to State Farm that they received a disc with blank data until nearly two weeks after receiving the data evidences even further that Plaintiffs never had any intention to run an analysis of the data despite their constant insistence that such data was necessary to determine membership in the class. Pls. Mtn. to Compel, at 2-3, 8-9, *Kendrick* ECF No. 234; Pls. Reply in Support of Mtn. to Compel, at 11, *Kendrick* ECF No. 280; Pls. Reply in Support of Mtn. for Protective Order, at 6, *Kendrick* ECF No. 199. In fact, Plaintiffs even admitted in their Response that Mr. Manning "was not asked to actually analyze the data using any specific geocoding software, but merely to opine as to whether the wholly objective data provided by the Defendants was capable of being analyzed using geocoding software." Pls. Response, at 4.

If Plaintiffs are only offering Mr. Manning to testify that Defendants have the proper data to run through geocoding software, his opinion provides no benefit to this Court. Plaintiffs' belief that it is immaterial that Mr. Manning did not perform a full geocoding analysis of Defendants' data is ironic because, absent such analysis, Mr. Manning cannot help this Court determine who was either overcharged for the local government premium tax, or charged the tax when not owed – a necessity in determining class membership. Therefore, Mr. Manning's testimony is entirely useless and should be excluded.

6

      **B.**      <u>**Mr. Manning's Opinions On Geocoding Software Are Not Supported By Any Scientific, Technical, Or Other Specialized Knowledge And Are Completely Unreliable.**</u>

Although Plaintiffs now attempt to couch Mr. Manning's testimony as limited to his opinion that Defendants have the proper data to input into a geocoding software program, in reality, Mr. Manning's expert report says a whole lot more.  First, Mr. Manning concludes that "[e]ven with certain information missing or inaccurate, [Group 1] can still make the tax district assignment with a **high degree of accuracy**." Manning Decl., at ¶ 5, attached as Exhibit A to Defendants' Memo in Support of Mtn. to Exclude Pls. Proposed Expert Witness, *Nichols* ECF No. 201; *Kendrick* ECF No. 328 (emphasis added).  Therefore, Mr. Manning concludes that "[a] report can be generated detailing the level of discrepancy that exits between the Group 1 assignment and the insurers' specification." Manning Decl., at ¶ 5.  Further, in their Motion for Class Certification, Plaintiffs use Mr. Manning's Declaration for evidence that "[g]eocoding is a software tool that can be used to determine whether an address – such as the location of an insured risk – has been **correctly** assigned to a tax jurisdiction based upon specific latitude and longitude coordinates." Pls. Mtn. for Class Certification, at 12.  Thus, Plaintiffs <u>**are**</u> attempting to use Mr. Manning's testimony to demonstrate the accuracy of geocoding programs while under the guise that he is only testifying that Defendants have the proper data to input into such programs.

Plaintiffs must demonstrate that geocoding software, particularly Group 1's software, is accurate and capable of determining the correct town code assignment for Mr. Manning's testimony to be useful.  Further, Plaintiffs must establish that for each proposed class member, Group 1's assignment is correct and the Defendant's is wrong.  It is precisely these conclusions that Mr. Manning is not qualified to make, as he has no knowledge or experience with Group 1's geocoding software.

Plaintiffs have vastly overstated Mr. Manning's qualifications to testify regarding the capabilities of geocoding software programs.  In their Response, Plaintiffs cite the various degrees held by Mr. Manning, but fail to identify how these degrees render Mr. Manning an expert in geocoding software. Pls. Response, at 9.  Next, Plaintiffs cite Mr. Manning's purported use and experience with the Tele Atlas program in the Orlando case. Pls. Response, at 9-10.  However, in that case, Mr. Manning and his colleague did no analysis, statistical or otherwise, of the output to determine if the results were accurate.  Manning Dep., at 31.  Therefore, Mr. Manning has no basis for his opinion on the accuracy and reliability of geocoding software, generally, or with Group 1 specifically, based upon his purported experience with Tele Atlas.  His experience was limited to inputting data into Tele Atlas, and not analyzing the accuracy of any output.  He has never verified that the output data is accurate.  Manning Dep., at 31.  Lastly, Plaintiffs cite Mr. Manning's curriculum vitae for the laundry list of cases that he has worked on. Pls. Response, at 9 n.14.  Again, Plaintiffs fail to demonstrate how any of these cases render Mr. Manning an expert in geocoding.  Plaintiffs provide no insight as to whether these cases even involve any use or experience with geocoding software.

Plaintiffs state that Mr. Manning's testimony is not aimed at "single-handedly affirming the vitality of geocoding," yet that is exactly what his expert report says: "[t]here are many third party vendors that provide software that will determine the **correct** tax district for insurance company customers." Pls. Response, at 13; Manning Decl., at ¶ 5 (emphasis added).  More specifically, discussing the capabilities of Group 1's software, Mr. Manning states:

> Their software allows the insurers to **correctly** determine the rate due on each insurance policy.  The only information Group 1 needs to assign customers to the appropriate tax district is their street address, city, state, and zip code.  Even with certain pieces of information missing or inaccurate, they can still make the tax district assignment with **a high degree of accuracy**.

8

Manning Decl., at ¶ 5 (emphasis added). Plaintiffs attempt to use this evidence to support their contention that their class definition is manageable because geocoding software can be used to determine who is in the alleged class. Pls. Mtn. for Class Certification, at 12. Again, though, without establishing that geocoding will result in **accurate** town code assignments, geocoding will not identify class members.

The entire basis for Mr. Manning's conclusion that geocoding software, in particular Group 1's software, can properly determine the correct tax district for insureds is based upon his cursory one to two hour review of Group 1's website. Manning Dep., at 57. Mr. Manning has unequivocally admitted that he has never used Group 1's software and is not familiar with its inner workings. Manning Dep., at 43, 55. Yet, Mr. Manning still opines that Group 1's geocoding software can accurately determine town tax codes.

Plaintiffs can no longer hide the glaring deficiencies of Mr. Manning's qualifications to testify as an expert in this case, or the unreliability of his conclusions. As evidenced by his deposition testimony, Mr. Manning has no relevant education, experience, or training that renders him qualified to testify on the capabilities and accuracy of geocoding software. *See* Manning Dep., at 21-22, 31-32, 77-78. Further, his conclusion that such software programs can accurately assign town tax codes is not based upon any reliable scientific, technical, or other specialized knowledge. Rather, it is based upon a cursory review of marketing materials contained on Group 1's website – information available to anyone with a computer and internet access.

### III. CONCLUSION

For the foregoing reasons and those contained in Defendants' Motion *in Limine* to Exclude Plaintiffs' Proposed Expert Witness, Defendants respectfully request the Court exclude

9

the testimony of Paul J. Manning and his expert report.

                Respectfully submitted,

                /s/ Rodger L. Eckelberry
                Robert M. Kincaid, Jr.
                rkincaid@bakerlaw.com
                Rodger L. Eckelberry
                reckelberry@bakerlaw.com
                Jessie M. Gabriel
                jgabriel@bakerlaw.com
                BAKER & HOSTETLER LLP
                65 East State Street, Suite 2100
                Columbus, Ohio 43215
                614.228.1541 tele
                614.462.2616 fax

                Donald L. Miller II
                dmiller@gsmblaw.com
                Maureen P. Taylor
                mtaylor@gsmblaw.com
                401 W. Main Street, Suite 1000
                Louisville, KY 40202
                502.618.5720 tele
                502.618.5701 fax

                *Counsel for Defendants Ohio Casualty*
                *Insurance Company and West American*
                *Insurance Company*

/s/ Mark A. Johnson
Mark A. Johnson
mjohnson@bakerlaw.com
Elizabeth A. McNellie
emcnellie@bakerlaw.com
Joseph Ezzie
jezzie@bakerlaw.com
Rand L. McClellan
rmcclellan@bakerlaw.com
Robert J. Tucker
rtucker@bakerlaw.com
BAKER & HOSTETLER LLP
65 East State Street, Suite 2100
Columbus, Ohio 43215
614.228.1541 tele
614.462.2616 fax

*Counsel for Defendants State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company*

## CERTIFICATE OF SERVICE

I hereby certify that on July 23rd, 2008, I served the foregoing on all parties via the Court's electronic filing system.

/s/ Rodger L. Eckelberry
Counsel for Defendants